### SCOTT v. SCOTT.

(District Court, D. Idaho, C. D. September 4, 1917.)

1. HUSBAND AND WIFE ☞249 — "COMMUNITY PROPERTY" — PROPERTY INCLUDED.

Under Rev. Codes Idaho, § 2674 et seq., all property acquired by either spouse after marriage, excepting by gift, bequest, or descent, is "community property" including the rents and profits of separate property.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Community Property.]

2. ADOPTION ☞20—ADOPTED CHILDREN—RIGHTS OF.

Rev. St. Idaho, §§ 2552, 2553 (Rev. Codes, §§ 2707, 2708), which were in force at the time of plaintiff's adoption and continued down to the time of the death of his adoptive mother, respectively declare that a child, when adopted, may take the name of the person adopting, and the two thenceforth sustain toward each other the legal relation of parent and child, and have all the rights and are subject to all the duties of that relation, and that the parents of an adopted child are from the adoption relieved of all parental duties toward and responsibility for the child adopted, and have no right over it. Held that, as an adopted child incurs all the liabilities of a natural child and owes the adoptive parents the same duties that he would have owed his natural parents, such adopted child should have all the rights of succession of a natural child.

3. ADOPTION ☞21—COMMUNITY PROPERTY—SUCCESSION—"LEGITIMATE ISSUE OF HIS, HER, OR THEIR BODIES."

Rev. St. Idaho 1887, § 5712, declared that upon the death of the wife the entire community property, without administration, belongs to the surviving husband, except such portion thereof as may have been set apart to her by judicial decree for her support and maintenance, which portion is subject to her testamentary disposition, and in the absence of disposition goes to her descendants and heirs, exclusive of her husband. Section 5713 declared that upon the death of the husband one half of the community property goes to the surviving wife, and the other half is subject to the testamentary disposition of the husband, and

in the absence of such disposition goes to his descendants or is distributed as separate property. The two sections, as amended by Act March 13, 1907 (Laws Idaho 1907, p. 346), were incorporated in Revised Codes as section 5713, which declared that upon the death of either husband or wife one half of the community property shall go to the survivor, subject to the community debts, and the other half shall be subject to the testamentary disposition of the deceased husband or wife, subject, also, to the community debts; that, in case no testamentary disposition shall have been made by the deceased husband or wife of his or her half of the community property, it shall descend equally to the legitimate issue of his, her, or their bodies. The Revised Statutes were in force at the time plaintiff was adopted by defendant and his wife. Defendant's wife died after the amendment of 1907, and prior to the amendatory act of Feb. 15, 1911 (Laws Idaho 1911, c. 13, § 1), which declares that upon the death of either husband or wife one half of the community property shall go to the survivors, and the other shall be subject to testamentary disposition of the deceased husband or wife in favor only of his, her, or their children or the parents of either spouse, and that in case no such testamentary disposition shall have been made by the deceased his share shall go to the survivor. *Held*, that plaintiff, though an adopted child, must, in view of the last amendatory act, and of the fact that an adopted child, under the statutes, is given all the rights and made subject to all the burdens and duties of a natural child, be deemed included in the expression the "legitimate issue of his, her, or their bodies," and so, his adoptive mother having died while that section was in force, plaintiff is entitled, there being no other issue and no testamentary disposition, to her half of the community estate.

In Equity. Bill by Warren F. Scott against Wallace Scott. On motion to dismiss. Motion denied.

Frank L. Moore, of Moscow, Idaho, and W. H. Casady, of Lewiston, Idaho, for plaintiff.

A. S. Hardy, of Grangeville, Idaho, and J. F. Ailshie, of Cœur d'Alene, Idaho, for defendant.

DIETRICH, District Judge. In October, 1889, the plaintiff, then a child six years of age, was duly adopted by the defendant Wallace Scott and his wife, Mary E. Scott, as their son, under the laws of Idaho. Mary E. Scott died intestate on March 17, 1910, at which time she and the defendant were possessed of community property of great value. There were no other children. Plaintiff has filed this bill for the purpose of having an adjudication of his claim that upon the death of his foster mother he succeeded to a one-half interest in the community property. By a motion to dismiss, the defendant raises the question whether or not, under the statutes of Idaho, an adopted child may inherit any interest in community property.

[1] Under the laws of the state, all property acquired by either spouse, after marriage, excepting by gift, bequest, or descent, is community property, including the rents and profits of the separate property. Idaho Revised Codes, § 2674 et seq. Doubtless the great bulk of the property in the state is so acquired and held. Succession to estates of deceased persons is provided for in the chapter entitled "Succession," embracing sections 5700 to 5717, inclusive, of the Revised Codes, which sections, with one exception, are identical with corresponding numbers in the Revised Statutes of 1887. By the amended

act of March 13, 1907 (Laws 1907, p. 346), sections 5712 and 5713, which at the time were the only statutory provisions relating directly to community property, were amended, and as amended were consolidated and incorporated in the Revised Codes as section 5713. In the Revised Statutes they read:

"Sec. 5712. Upon the death of the wife, the entire community property without administration, belongs to the surviving husband, except such portion thereof as may have been set apart to her, by judicial decree, for her support and maintenance, which portion is subject to her testamentary disposition, and in the absence of such disposition, goes to her descendants, or heirs, exclusive of her husband.

"Sec. 5713. Upon the death of the husband, one-half of the community property goes to the surviving wife, and the other half is subject to the testamentary disposition of the husband, and in the absence of such disposition goes to his descendants, equally, if such descendants are in the same degree of kindred to the decedent; otherwise, according to the right of representation; and in the absence of both such disposition and such descendants, is subject to distribution in the same manner as the separate property of the husband. In case of the dissolution of the community by the death of the husband, the entire community property is equally subject to his debts, the family allowance, and the charges and expenses of administration."

And in the Revised Codes:

"Sec. 5713. Upon the death, of either husband or wife, one-half of the community property shall go to the survivor, subject to the community debts, and the other half shall be subject to the testamentary disposition of the deceased husband or wife, subject also to the community debts. In case no testamentary disposition shall have been made by the deceased husband or wife of his or her half of the community property, it shall descend equally to the legitimate issue of his, her or their bodies. If there be no issue of said deceased living, or none of their representatives living, then the said community property shall all pass to the survivor, to the exclusion of collateral heirs, subject to the community debts, the family allowance, and the charges and expenses of administration."

In the chapter relating to succession, as found in both the Revised Statutes and the Revised Codes, there is no express reference to adopted children, or to the subject of adoption, with the single exception that, in defining the rights of an illegitimate child, it is provided that, while such child inherits from the father and mother the same as if he had been born in lawful wedlock, he does not "represent" the father or mother by inheriting from his or her kindred, unless the parents intermarry and the father acknowledges him as his child "or adopts him into his family," and further that, unless such child is so acknowledged or adopted, if he "dies intestate, without lawful issue, his estate goes to his mother, or, in case of her decease, to her heirs at law."

[2] But during the whole period from 1887 down to the present time the statutes of the state (Rev. Stat. § 2545 et seq.; Revised Codes, § 2700 et seq.) have without change provided for the adoption of children and defined their status. Accordingly any minor child may be adopted by an adult person who is at least 15 years older than the child. A married man cannot adopt without the consent of his wife, nor a married woman without the consent of her husband. Both parents, if living, and the child, if over the age of 12 years, must consent. The method of adoption is by a proceeding in the probate court, and

only if, after a hearing, the probate judge is "satisfied that the interests of the child will be promoted," is he authorized to make an order of adoption. Such order declares that the child shall thereafter "be regarded and treated in all respects as the child of the person adopting." Sections 2552 and 2553 of the Revised Statutes (sections 2707, 2708, Revised Codes) are as follows:

"Sec. 2552. A child, when adopted, may take the name of the person adopting, and the two thenceforth sustain toward each other the legal relation of parent and child, and have all the rights and are subject to all the duties of that relation.

"Sec. 2553. The parents of an adopted child are, from the time of the adoption, relieved of all parental duties towards, and all responsibility for, the child so adopted, and have no right over it."

When we read together, as we must, this chapter on adoption with the chapter on succession, little room is left for doubt that an adopted child succeeds to the separate estate of the deceased parent equally with the natural child. There is a suggestion in the brief, possibly having feeble support in the decided cases, that the adoption statutes were intended to establish and define only the personal status of the child and the personal relations between it and its foster parent; but in that view I am wholly unable to concur. The language of the statute is that upon adoption the child shall "thenceforth be regarded and treated in all respects as the child of the person adopting," and it and the adoptive parent shall "sustain toward each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation." The language is plain, and only by the exercise of ingenuity can we read into it a proviso excepting from the rights of such child the important right of succession. To be sure, the right of succession is not a natural right, but is one created by law; but legal relations and legal rights were the very matters with which the Legislature was concerned. No legislative act, of course, can transform an adopted child into a child by birth; but all the legal rights and obligations of the one may be conferred upon the other. And why should the court be astute to discover a way by which an important exception may be read into the general language of the statute? As suggested, there is no natural right of succession in any one, even a child by birth. Succession is a matter purely of public policy, and such policy is concerned with the well-being of the adopted child quite as much as with that of the child by birth. The one ultimate question upon which the probate court must find, before making its order of adoption, is whether the interests of the child will be promoted. The interests, not of the natural parents, or of the foster parents, but of the child, are put in the foreground. The right to be cared for out of the property of its deceased parents is of the greatest importance to the child. In the present case, the adopted child having reached maturity before his foster mother died, this consideration does not make so strong an appeal; but suppose both foster parents had died when plaintiff was only 7 or 8 years of age, would it not have seemed harsh in the extreme that he should thus be thrown helpless upon the charity of the world? In such a contingency, the law, ostensibly enacted for the benefit of the child, would have cut off his right to support

from his natural parents without putting anything in its place. The defendant here had the legal right to receive the plaintiff's wages until he reached the age of 21, and if the tables were now turned, and the defendant were poor and unable to maintain himself by work, it would be the plaintiff's legal duty, to the extent of his ability, to maintain him. . Revised Codes, §§ 2695, 2697. Such rights and obligations should be reciprocal, and I am inclined to think that, in the matter of succession, considerations both of fairness and of the public interest strongly support the policy of placing the adopted child upon the same footing with the child by birth.

Now, as we have seen, prior to the amendatory act of March 13, 1907, children, either natural or adopted, did not inherit community property upon the death of the mother. It all went to the husband of the deceased without administration. If the husband died intestate, one-half would pass to his "descendants." There is more elaborate provision for the disposition of the separate property, and as to that there was no distinction between husband and wife. In the sections relating to separate property the terms "child" or "children" and "issue" are used frequently, without any apparent intention to make the slightest distinction. · But, as already indicated, it is thought that, when we read with these sections the provisions covering adoption, it must be held that "child" and "issue" both include the child by adoption as well as the child by birth. Not, of course, because an adopted child can be or is the "issue" of the decedent, but because the law has expressly conferred upon him the legal status of an "issue." The man of foreign birth never becomes native born, but by due process of naturalization he acquires the status of one native born, with all his rights and obligations. It is in effect the same as if at the end of the chapter on succession there were added a section providing in substance that, wherever in the chapter the words "child" and "issue" are used, adopted children as well as children by birth are intended.

[3] We come now to a consideration of what I am inclined to think is the only serious question, and that is whether or not the Legislature, in providing by the amendment of March 13, 1907, for a new succession in the case of community property, intended to withhold all right from the adopted child to inherit from its foster mother, and to take away the right which it had theretofore enjoyed of inheriting from its foster father. Counsel are apparently agreed that by reason of the diversity in the statutory provisions involved, and the nature of the issues adjudicated, the decided cases are of little present value. Nor is there any serious difference of view touching the sentiment and influences which led to the 1907 amendment. The women of the state, reasoning that community property is the fruit of the joint effort of husband and wife, contended that the rights of both therein should be equal. It will be noted that the legislation in no wise affects the status of the community property during the existence of the community; the husband, as the legal head of the family, continues in control. But under the amendment the interest of the wife upon her death takes the form of a separate and distinct estate. If the women of the state, therefore, secured what they sought, it was not a right personally beneficial, for in effect it springs into existence only upon the wife's death.

While there may have been a measure of mere sentiment back of the movement, the women doubtless sought the legislation primarily in order that thus they might have it within their power to make provision for those in whose well-being they are naturally most deeply concerned —their children and their parents.

In support of the view that, under the amendatory provisions, adopted children do not inherit, the defendant's chief reliance is upon the supposed limitation of the phrase "issue of his, her, or their bodies." But upon reflection I am unable to attach great significance thereto. "Issue," as a matter of course, implies "issue of the body"; there is no other issue. As legal expressions the two phrases are of identical import. Would it add anything, or to any degree or in any manner change the meaning of the sections governing the descent of separate property, if wherever the word "issue" is found we append to it the phrase "of his, her, or their bodies"? To ask the question is to answer it. And that here the entire phrase was used as the equivalent only of the word "issue" is conclusively shown in the act itself, for immediately following it is the sentence: "If there be no issue of said deceased living, their," etc. It is, of course, futile to ask why the phrase "issue of the body" was used, rather than merely the word "issue." It is enough to say that they are generally understood to import the same meaning, and were manifestly so understood in drafting this act. It would be quite as reasonable to ask why the terms "child" or "children" and "issue" are used interchangeably and as synonyms in the sections relating to separate property. Why a draftsman uses one rather than another of two or more synonyms it is impossible to answer, and it is likewise unimportant to inquire.

We then have here an enactment providing that in certain contingencies the interest of the deceased in community property shall descend to his or her issue or children. Now, assuming that the language used naturally implies a child by birth, as is doubtless true of similar language employed throughout the other sections of the chapter relating to separate property, does the mere fact that the legislation is new— that it is subsequent in origin to the adoption statutes—exempt it from the operation thereof? In other words, are the rights and duties and the status of an adopted child to be measured by the law as it stood when the adoption statutes were enacted, or do they always correspond to the rights and duties and status of the child by birth, automatically changing as those of the latter change? It is thought that clearly the latter view must prevail, and that, in the absence of evidence of a contrary legislative intent, any law conferring upon a child by birth a new right or imposing upon it a new duty must be construed as conferring a like right or imposing a like duty upon the adopted child. For example, section 16 of the Revised Statutes, carried forward into the Revised Codes by the same number, provides that the term "writing" shall include "printing," and the word "oath" "affirmation." Now, suppose we find in the Revised Codes a section originating in a more recent enactment, providing that a petition in a given proceeding must be in writing, signed by the petitioner and verified by his oath. Would not a printed petition, signed

by the petitioner and verified upon his affirmation, meet all the require-
ments?

Defendant characterizes the amendatory act as a freak, and dwells
upon the fact that in practice it turned out to be unsatisfactory and was
soon changed. But the bearing of such a consideration upon the ques-
tion of legislative intent is not apparent. The law was not unsatisfac-
tory because of the rights which might accrue to adopted children in
·case of the intestacy of the deceased. It was the effect of the act
generally upon a going business, in case of the death of the wife, and
upon record titles, that gave rise to complaint, and this entirely aside
from the question· whether there was or was not an adopted child.
The right conferred upon the child by birth was quite as troublesome
as that conferred upon the adopted child, and of course was more fre-
quently to be reckoned with, because adopted children are comparative-
ly few. Nor am I able to perceive in the exclusion of illegitimate
children any evidence· of an intent to exclude children by adoption.
It might very well be presumed, if it were not a matter of common
knowledge, that the proposal to put husband and wife upon the same
footing as to community property met with opposition. While it is
difficult to argue against the principle of equality, it would not be diffi-
cult to point out the possibility of undesirable results, should the prac-
tically unlimited right of the husband as it stood under the old law be
extended to the wife. Every illegitimate child was the heir of its
mother; whereas, it could be the heir of the father only with his con-
sent, expressed in a formal manner. Are not both the limitations of
legitimacy and other changes of phraseology to be accounted for by
assuming that they are the results of such opposition? Much is said
in the briefs of defendant about the enlargement of the power of the
wife, and the creation of what is referred to as a new estate for her
in the community property; but it must not be overlooked that, upon
the other hand, the power of the husband was substantially curtailed.
The promoters of the reform secured recognition for the principle for
which they strove, namely, equality of rights; but this was secured,
not by granting to the wife the power which the husband then had,
but by first decreasing this power and then conferring it upon her
equally with him.

When the defendant, therefore, asks whether it is likely that the
Legislature intended to confer upon the adopted child the right to in-
herit community property from its foster mother, the question may be
answered by the equally pertinent question whether, without any ex-
pressed or apparent reason, it intended to reverse the settled policy of
the state and take away. from the adopted child the right to inherit
community property from its foster father. For it must be borne in
mind that if the defendant's contention here is sound, then had he died
instead of his wife, the plaintiff could not have inherited from him—a
right which the latter would have enjoyed under the law as it stood
prior to the amendment. There are reasons founded in natural senti-
ment, if not in public policy, why one spouse would object to the
descent of property which he or she had been instrumental in accumu-
lating, to the illegitimate child of the other. But no reasons are appar-
ent why either the husband or the wife would seek to withhold the right

of descent from an adopted child any more in the case of community than of separate property. The relation growing out of adoption is a known, legitimate, and respectable one, and cannot be assumed by one spouse without the consent of the other.

I am still further unable to understand how any support can be drawn from the amendatory act of February 15, 1911. It is as follows:

"Upon the death of either husband or wife, one-half of all the community property shall go to the survivor, subject to the community debts, and the other half shall be subject to the testamentary disposition of the deceased husband or wife, in favor only of his, her or their children or a parent of either spouse, subject also to the community debts, provided that not more than one-half of the decedent's half of the community property may be left by will to a parent or parents. In case no such testamentary disposition shall have been made by the deceased husband or wife of his or her half of the community property, it shall go to the survivor, subject to the community debts, the family allowance and the charges and expenses of administration: Provided, however, That no administration of the estate of the wife shall be necessary if she dies intestate." Session Laws 1911, p. 29, § 1.

If that act may properly be referred to at all, it would seem to militate against the defendant's position. To be sure, it implies a dissatisfaction with the 1907 amendment; but, as already suggested, that fact is in itself without present significance. The undoubted general purpose of the act of 1911 was to reduce the number of cases where community estates would be dissolved (with the consequent confusion in business and uncertainty of titles), upon the death of one member of the community. The principle of absolute equality between husband and wife is retained; but the right of succession is practically abolished, and the burden of dividing up the estate is imposed upon the husband or wife, in that his or her wishes can be given effect only by affirmative action, namely, the execution of a will. But the point is this: The defendant's contention here is that, in carving out of the community property a new estate for the wife, it is wholly improbable that she would ask for or the Legislature would grant the right to destroy the integrity of the community estate for the benefit and protection of an adopted child, and that in view of such improbability it must be held that by adopting the language "issue of the body" it was intended to deny succession to such child. But four years later, in 1911, when manifestly the Legislature was bending every effort to reduce to a minimum the confusion and uncertainty incident to the dissolution of community estates, and for that reason cut off entirely the right of succession and greatly restricted the power of testamentary disposition, there was left the power in both husband and wife to bequeath to adopted children equally with children of the blood.

In view of all of these considerations, I cannot believe that in the use of the language upon which the defendant relies, in the act of 1907, the Legislature intended to discriminate against the adopted child. To have made such discrimination would in effect have been to amend the chapter upon adoption, and if such had been the intention it would seem only natural that some reference would have been made to it, exempting the new enactment from the operation thereof. We must remember that, as they stand, the two provisions

are not inconsistent, or repugnant one to the other. It is contended only that the later legislation is independent of the earlier. In a sense, of course, they are contemporaneous expressions of the legislative will, for they are both integral parts of the Revised Codes. But, aside. from the principles governing codified statutes pertaining to the same subject, I do not think I would be warranted in holding that the Legislature intended thus to make an exception to the general statutory rule of equality of rights between children by adoption and children by birth.

I have therefore concluded to deny the motion, and such will be the order.