Day, J.
 

 The paramount questions in this case are: First, what construction shall be given the word
 
 “issue”
 
 in Section 8577, General Code, as amended by 110 Ohio Laws, p. 15, when considered in connection with the designation of heir statute, Section 8598, General Code? Second, what effect,
 
 *531
 
 if any, should be given that portion of the latter section which provides that “the rules of inheritance will be the same, between him and the relations by blood of the declarant, as if so bom?”
 

 The two sections involved, in so far as they are material, are as follows:
 

 Section 8598: “A person of sound mind and memory may appear before the probate judge of his county, * * * file a written declaration, * * # declaring that, as his or her free and voluntary act, he or she did designate and appoint another, naming and stating the place of residence of such person specifically, to stand toward him in the relation of an heir-at-law in the event of his or her death. * * * The judge thereupon shall enter that fact upon his journal, and make a complete record of such proceedings. Thenceforward the person thus designated will stand in the same relation, for all purposes, to such declarant as he or she could, if a child bom in lawful wedlock. The rules of inheritance will be the same, between him and the relations by blood of the declarant, as if so born.”
 

 Section 8577. “"When the relict of a deceased husband or wife dies intestate and
 
 without issue,
 
 possessed of any real estate * * * which came to such intestate from a former deceased husband or wife by deed of gift, devise or bequest, or under the provisions of Section eighty-five hundred seventy-four, then such estate * * * shall pass to and vest in the children of such deceased husband * * * or the legal representatives of such children. If there are no children or their legal representatives living, then such estate * * * shall
 
 *532
 
 pass and descend, one-half to the- brothers and sisters of such intestate, or their legal representatives, and one-half to the brothers and sisters of such deceased husband or wife from which such * * * estate oame-, or their legal representa,tives.”
 

 The rule of construction relative to whether the terms “child” or “children,” or “issue,” in statutes governing the distribution of decedent’s estates, include adopted children (designated heirs may be so regarded), is well stated in
 
 Ross
 
 v.
 
 Ross,
 
 129 Mass., 243, 266, 37 Am. Rep., 321, and 30 L. R. A., (N. S.), 914, where the authorities are collected, as follows:
 

 “In general the statutes of descent and distribution must be understood as laying down general rules of inheritance, and not as completely and accurately defining how the status is to be created which gives the capacity to- inherit. Generally, they do not undertake to define the various terms used, or to state what is necessary to constitute the various legal relations involved. Since these requisites must be looked for elsewhere-, the statutes of adoption, which usually define, at least to some extent, the -status of the child adopted, must be looked to, in order to determine the rights of an adopted child under the statutes of distribution. ’ ’
 

 Owing to the fact that the case at bar is one of statutory construction, the rule must prevail that, where there is seeming conflict, statutes must be construed together with a view -of reconciling any apparent differences and sustaining both statutes, if possible.
 

 
 *533
 
 The Legislature undoubtedly has the power to declare the legal status of an adopted child or designated heir and to make him capable of inheriting from the adopting parent or the person so designating him ás heir. These provisions of the statutes creating the rights of inheritance between the parties to an adoption or the parties to a designation of an heir and the provisions of the law of descent and distribution of intestate estates are
 
 m pari materia,
 
 and should, therefore, be construed together as one law.
 

 The word “issue” has several meanings in the law of decedents’ estates. What its meaning may be in a given case depends upon the circumstances under which it is used, whether it be found in a will, a contract, or statute. Its primary signification imports descendants and has to do with the blood of the ancestor, but by general use the word “issue” has often a wider signification - and may. include not only “children” but “grandchildren,” “descendants,” and “adopted children.”
 

 In other jurisdictions the word “issue,” in the statute of descents, does not limit the right of inheritance to lawful children, but is held to include children whose relation depends on statutory enactment, such as a child by adoption or a designated heir.
 
 Finley
 
 v.
 
 Brown,
 
 122 Tenn., 316, 123 S. W., 359, 25 L. R. A., (N. S.), 1285;
 
 Riley
 
 v.
 
 Day,
 
 88 Kan., 503, 129 P., 524, 44 L. R. A., (N. S,), 296;
 
 In the Matter of the Estate of Newman,
 
 75 Cal., 213, 16 P., 887, 7 Am. St. Rep., 146;
 
 Ross
 
 v.
 
 Ross,
 
 129 Mass., 243, 37 Am. Rep., 321;
 
 In re Walworth’s Estate,
 
 85 Vt., 322, 82 A., 7, 37 L. R. A., (N. S.), 849, Ann. Cas., 1914C, 1223;
 
 Buckley
 
 v.
 
 Frasier,
 
 
 *534
 
 153 Mass., 525, 27 N. E., 768;
 
 Warren, Adm’r.,
 
 v.
 
 Prescott,
 
 84 Me., 483, 24 A., 948, 17 L. R. A., 435, 30 Am. St. Rep., 370;
 
 In re Cadwell’s Estate,
 
 26 Wyo., 412, 186 P., 499;
 
 Scott
 
 v.
 
 Scott,
 
 (D. C.), 247 F., 976;
 
 Fosburgh
 
 v.
 
 Rogers,
 
 114 Mo., 122, 21 S. W., 82, 19 L. R. A., 201;
 
 Power
 
 v.
 
 Hafley,
 
 85 Ky., 671, 4 S. W., 683;
 
 Eckford
 
 v.
 
 Knox,
 
 67 Tex., 200, 2 S. W., 372;
 
 Tirrell
 
 v.
 
 Bacon
 
 (C. C.), 3 F., 62;
 
 Wagner
 
 v.
 
 Varner,
 
 50 Iowa, 532;
 
 Markover
 
 v.
 
 Krauss,
 
 132 Ind., 294, 31 N. E., 1047, 17 L. R. A., 806.
 

 The right of plaintiff in error rests on the following provisions of Section 8598:
 

 “Thenceforward the person thus designated will stand in the same relation, for all purposes, to such declarant as he or she could, if a child bom in lawful wedlock. The rules of inheritance will be the same, between him 'and the relations by blood, of the declarant, as if so bom.”
 

 It would be difficult to frame language more direct and expressive of the thought that the intention of the Legislature was to place a designated heir upon an absolute equality and in the same class with the “issue” of, or “child born in,” lawful wedlock, and to vouchsafe to him the same rights in an intestate’s estate under the statutes of descent and distribution as if a child so born.
 

 We, therefore, ascribe the same meaning to the expression “child born in” lawful wedlock and “issue of” those united in lawful wedlock. This being so, it follows that Isabelle Robinson did not die without issue under the construction which we give Section 8598, General Code ; hence the provisions of ISleotion 8577, General Code, under which
 
 *535
 
 defendants in error claim, do not apply to the case at bar.
 

 In
 
 Buckley
 
 v.
 
 Frasier, supra,
 
 153 Mass., at page 527, 27 N. E., 769, it is said:
 

 “If the words ‘issue living’ be construed according to their strict meaning, Section 1 of the Pub. Sts., c. 124, is not reconcilable with Section 7 of the Pub. Sts., o. 148, or rather operates
 
 pro tanto
 
 to repeal it. The general intent of the statute (Pub. (Sts., o. 148) is to place the adopted child in relation to either of his adopting parents, so far as their property is concerned, in the same position that he would be if their natural child. No stronger expression could be used than that which permits him to take the share of the property of the adopting parent ‘that he would have taken if born to such parent in lawful wedlock.’ That the adopted child should be deprived of that which is given so explicitly is not readily supposable. There is less difficulty in holding that the word ‘issue’ is used in the sense of child or children, and as thus construed it includes adopted children. If construed 'otherwise, the adopted child no longer occupies'the relation of a child born in lawful wedlock to either of his or her adopting parents.”
 

 If Section 8598, General Code, be substituted in the above quotation for ISeotion 7 of the Public Statutes, Chapter 148, and Section 8577, General Code, be substituted for Section 1 of the Public Statutes, Chapter 124, the language might well apply to the case at bar.
 

 Our attention is called to the 'case of
 
 Phillips, Ex’r.,
 
 v.
 
 McConica, Gdn.,
 
 59 Ohio St., 1, 51 N. E.,
 
 *536
 
 445, 69 Am. St. Rep., 753. That case arose under a will, and presented facts where a testator made a devise to certain devisees, one of whom died before the testator, leaving an adopted child. It involved iSiection 10581, General Code (Section 5971, Revised Statutes), which provides:
 

 “When a devise of real or personal estate is made to
 
 a child or other relative
 
 of the testator, if such child or other relative was dead at the time the will was made, or dies thereafter, leaving
 
 issue
 
 surviving the testator, in either case such issue shall take the estate devised as the devisee would have done, if he had survived the testator. ’ ’
 

 It was held that the legacy lapsed because the act of “adoption does not make the adopted child of the blood of its adopter, nor of the blood of his ancestors,” but the adopted child is held to be able to inherit
 
 from
 
 its adopter but not
 
 through
 
 him.
 

 Under the statute as to wills, Section 10581, General Oode, requiring blood relationship as a prerequisite to inheritance by representation, clearly the adopted child could not come within its terms. However, the right of the heir of an adopted child to inherit by representation in intestate’s estates was recognized in
 
 Kroff
 
 v.
 
 Amrhein,
 
 94 Ohio St., '282, 114 N. E., 267, affirming the Court of Appeals, 5 Ohio App., 37.
 

 In the case at bar the inheritance is directly
 
 from
 
 the designator, and there is no question involved in this case of the right to inherit
 
 through
 
 the person so designating. The question decided in the
 
 Phillips
 
 v.
 
 McConica case
 
 therefore cannot be determinative of the right of the designated heir
 
 *537
 
 to inherit from the person so designating him under Section 8598, General Code, as one who should stand “for all purposes, to such declarant as '* * * if a child born in lawful wedlock,” and- the “rules of inheritance
 
 * *
 
 * between bim and the relations by blood of the declarant” to be the same “as if so born.”
 

 We think the two cases are essentially different in principle and decision.
 

 In
 
 Theobald
 
 v.
 
 Fugman,
 
 64 Ohio St., 473, 60 N. E., 606, the facts involved a bequest made by a testatrix in favor of a church, and the testatrix dying within one year the designated heirs sought to bring themselves within the terms of Section 10504, General Code (¡Section 5919, Revised Statutes), which provides:
 

 “If a testator dies leaving issue of his body, or an adopted child, living, * * * and the will of such testator gives * * * the estate * * * or any part thereof to a benevolent, religious * # * purpose, * * * such will as to such gift * * # shall be invalid unless it was executed according to law, at least one year prior to the death of the testator.”
 

 It was held that the legacy was not defeated by the existence of a designated heir. The reasoning of the court appears in the following language on page 483 (60 N. E., 609):
 

 “The Legislature thus found, besides blood relations capable of inheriting from an ancestor, two classes having certain statutory rights of inheritance, viz., adopted children and designated heirs. With these two conditions before the lawmakers they chose to expressly include within
 
 *538
 
 the effect of Section 5915 [10504, G. C.], one of those classes and omit the other. If we apply the well known rale of construction
 
 expressio unius est exclusio aUerius,
 
 the inevitable result is that
 
 designated heirs
 
 are not
 
 within the statute-”
 

 In other words, the court was careful to limit the law declared to the facts found in that case and to the specific language of the statute involved. The statute measuring the rights of the designated heir in the
 
 Fugman case
 
 expressly omitting him, it followed that he had no enforceable rights.
 

 We do not regard either of the above oases as controlling under the facts and statutes involved in the case at bar, and the same are readily distinguishable.
 

 The second question arising on this record is the force and effect to be given so much of Section 8598 as is contained in the words, “The rales of inheritance will be the same, between him and the relations by blood of the declarant, as if so born. ’ ’
 

 It is urged that this expression in the statute limited the right of Leroy Coohrel to. inherit under Section 8598, General Code, to the right that a child of Isabelle Robinson would have only against the blood relatives, of Isabelle Robinson, and that he must stand in relation to the property that was formerly owned by James M. Robinson as a stranger to the title, in so far1 as the kindred of James M. Robinson are concerned; in other words, that the rights of inheritance vouchsafed to the designated heir under Section 8598 are only such as can be asserted against the relations by blood of Isabelle Robinson.
 

 We do not believe that such was the legislative
 
 *539
 
 intent in the original enactment of Section 8598, nor do we believe it to be the purpose of the act to so limit it.
 

 The history of the act assists in its interpretation. It was passed April 29', 1854, 52 Ohio Laws, 78, and its language is practically the same to-day as when it was originally enacted. A slight change may be noted in a comparison of the act as passed and its present form in the General Code. As originally enacted, it provided:
 

 “And thenceforward, such person thus designated, shall be taken and held, in all places, to stand in the same relation, Tor 'all purposes, to said declarant, as he, or she, could, if a child born in lawful wedlock; and the rules of inheritance shall be the same, between him or her, and the relations by blood, of the declarant, as if so born * * V’
 

 A comparison of the foregoing with the act as it, stands 'to-day will disclose no change in meaning, and but slight change in punctuation and phraseology; the words “in all places” having been dropped in the codification.
 

 Now, the section under which defendants in error claim, Section 8577, General Code, was enacted in 1877, Volume 74, Ohio Laws, page 81. Prior to the enactment of Section 8577, under the rule of
 
 Brower
 
 v.
 
 Hunt,
 
 18 Ohio St., 311, if Isabelle Robinson had died without issue the descent would have been to none other than her brothers and sisters, and the brothers and sisters of the deceased consort, from whom the estate came, would not have shared therein.
 
 Lathrop
 
 v. Young, 25 Ohio St., 451;
 
 Townsend’s Ex’rs.
 
 v.
 
 Townsend,
 
 25 Ohio St., 477, 489. So that at the time of the
 
 *540
 
 passage of Section 8598, in 1854, the Legislature had only to provide against the blood relations of the intestate in order to place the designated heir upon the same plane as a child bom in lawful wedlock and to vest him with such rights.
 

 The doctrine is well expressed in 25 Ruling Case Law, p. 968:
 

 “It is an old and unshaken rule in the construction of statutes that the intention of a remedial statute will always prevail over the literal sense of its terms, and therefore when the expression is special or particular, but the reason is general, the expression should be deemed general.”
 

 It is also a rule of construction that while the title to an act is no part thereof, yet resort may be had thereto for the purpose of construction. Now the act in question, when passed in 1854, was entitled “An act to enable any person to designate an heir at law.” Certainly no limitation is expressed in the title, and it would have been natural to have made it read “an act to enable any person to designate an heir at law in so far as his blood relations are concerned,” or to have used some other qualifying phrase or words of limitation, if such had been the intention.
 

 We think the intention of the Legislature is clear and apparent that the designated heir was to be regarded as a child entitled to inherit, as if born in lawful wedlock, and that he was to be so taken and held in all places and for all purposes, and the language, “the rules of inheritance shall be the same, between him or her, and the relations by blood, of the declarant, as if so born,” was but an attempt to emphasize the fact that the designat
 
 *541
 
 ed heir was to be the same as a child bom in. lawful wedlock of the declarant, with all rights incident thereto as heir ait law. If the declarant had children, or other blood relation, then this designated heir was to be as one of them and share equally with them. A construction consistent with the balance of the statute should be given, and the words in question have a reasonable meaning in harmony with the purpose of the act if we concede the paramount purpose to be the designation of an heir at law with all rights of a child bom in lawful wedlock. The words, “between him and the relations by blood of the declarant,” instead of being words of limitation, may be construed as enlarging his rights of inheritance upon the principle of representation announced in.
 
 Kroff
 
 v.
 
 Amrhein, supra.
 

 We do not, therefore, regard the language as a limitation upon that which has been expressed before in the statute, but rather as an emphasis and repetition thereof.
 

 Isabelle Robinson died seized of an undivided one-half interest in tract No. 2, in her own right, and the remaining undivided interest of said tract No. 2, being nonaneestral property, passed to her by virtue of Section 8574, G-eneral C'ode, as the relict of her intestate husband, James M. Robinson; and, further, said Isabelle Robinson being seized by virtue of said Section 8574, G-eneral Code, of the entire interest of tract No. 1, vesting in her as the relict of her intestate husband, the same also being nonaneestral property in said James M. Robinson, it follows that upon her death intestate
 
 *542
 
 her entire estate vested in her designated heir, Leroy Cochrel.
 

 Entertaining these views, the judgments of the Court of Appeals and of the common pleas court must be reversed, and, proceeding to render the judgment that the common pleas court should have rendered, it is found by this court that upon the death of said Isabelle Robinson, James McKee Robinson Leroy Cochrel became seized of an estate in fee simple in both tracts, Nos. 1 and 2, as designated heir of Isabelle Robinson, by virtue of the statutes of descent and distribution of this state, and his title thereto is quieted as against the heirs at law and legal representatives of said James M. Robinson and Isabelle Robinson, as prayed for in the answer filed herein.
 

 Judgments reversed, and decree for plaintiff in error.
 

 Judgments reversed.
 

 Marshall, C. J., Jones, Matthias, Allen, Kinkade and Robinson, JJ., concur.