**CITY OF FOSTORIA, Appellee,**

v.

**CSX RAILROAD, Appellant.**

[Cite as *Fostoria v. CSX RR.* (1999), 134 Ohio App.3d 171.]

Court of Appeals of Ohio,
Third District, Seneca County.

No. 13–99–15.

Decided Sept. 24, 1999.

*Barbara Dibble,* City Prosecutor, for appellee.

*Anspach & Serraino, Mark D. Meeks* and *Joshua W. Lanzinger,* for appellant.

---

THOMAS F. BRYANT, Presiding Judge.

Appellant, CSX Railroad, appeals from the judgment of the Municipal Court of Fostoria denying appellant's motion to dismiss and finding appellant guilty of violating subsection PM–304.2 of the Property Maintenance Code for the city of Fostoria and fining appellant thirty-five dollars per day.

The city of Fostoria Zoning Department cited appellant on January 29, 1998, for being in violation of subsection PM–304.2 of the city of Fostoria Existing Structures Code. More particularly, the citation alleged that certain bridges owned by appellant were inspected and found to be rusty and apparently in need of paint. The citation allowed one hundred and sixty days for abatement. On December 22, 1998, a complaint was filed by the city of Fostoria to enforce the citation.

On March 23, 1999, appellant filed a motion to dismiss the complaint, alleging various grounds in support of the motion. On April 12, 1999, appellant's motion was denied and a trial commenced. Following the April 12 trial, appellant was found guilty by the trial court of violating subsection PM–304.2 of the city of Fostoria Existing Structures Code and fined.

It is from the denial of the motion to dismiss and the judgment of guilt and imposition of fine that appellant now appeals, asserting six assignments of error. As we find it dispositive, we begin our opinion with consideration of appellant's fifth assignment of error.

Fifth Assignment of Error

"The trial court erred in finding that the City of Fostoria Existing Structures Code (Adopted from the BOCA Code) applies to bridges."

Appellant argued in its motion to dismiss at trial and now on appeal that the city of Fostoria Existing Structures Code (hereinafter "Existing Structures Code," "Property Maintenance Code" or "Code") under which appellant was cited was simply not intended to apply to bridges. The trial court concluded otherwise, finding that subsection PM–304.2 of the Existing Structures Code in fact applied to bridges. The trial court recognized that nowhere in the Fostoria Existing Structures Code is the word "bridge" utilized. The court reasoned however that the Code was intended to apply to, *inter alia*, "structures." The trial court concluded that the definition of "structure" provided in section PM–202.0 of the Code was "broad enough to include a bridge, particularly when the Court notes that the property maintenance code also deals with accessory buildings, accessory structures, sidewalks and driveways and walkways, stairs, parking spaces and similar areas." According to the trial court, because "structure" included a bridge, subsection PM–304.2 applied to the railroad bridges at issue in the trial. We believe that the trial court erred in applying the ordinance upon the facts presented by this case.

When applying the definition of structure, "that which is built or constructed or a portion thereof," the Fostoria Property Maintenance Code would seemingly apply to almost everything manmade. Such a construction would be irrational; consequently, the strict application of the meaning of structure as defined by the code with no additional considerations would produce a nonsensical result. The trial court was therefore required to interpret the word "structure" within the context of the Property Maintenance Code.

The standard of review of statutory construction is well settled. The fundamental and overriding rule in the interpretation of an ordinance is to ascertain, declare, and give effect to the intention of the legislature in enacting the statute. *State v. S.R.* (1992), 63 Ohio St.3d 590, 594, 589 N.E.2d 1319, 1322–1323. An interpretation adopted should not operate to defeat the obvious intention of the legislature or do violence to it, in whole or part. *Harris v. Van Hoose* (1990), 49 Ohio St.3d 24, 26, 550 N.E.2d 461, 462, relying upon *Cochrel v. Robinson* (1925), 113 Ohio St. 526, 149 N.E. 871. It is axiomatic that it is not the function of a court to give a statute an operation the enacting body did not intend. *State ex rel. Wilmot v. Buckley* (1899), 60 Ohio St. 273, 54 N.E. 272. The intention declared by a legislative body as its own intention in the enactment of a particular law should be followed. *State v. Sidell* (1972), 30 Ohio St.2d 45, 59 O.O.2d 74, 282 N.E.2d 367. In determining legislative intent, the court must look to the text of the statute itself, *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 105, 65 O.O.2d 296, 298, 304 N.E.2d 378, 381, and if such intent is clearly

expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged, or abridged to suit the particular facts of the case at bar. *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 36 O.O. 554, 78 N.E.2d 370.

Our analysis begins with the ascertainment of the intent of the Fostoria City Council in adopting the Property Maintenance Code for the city. In this case, we need to look no further than the Code itself. The expressed scope and purpose of the city of Fostoria Property Maintenance Code provides insight into the intent of the city council in adopting the legislation. The Code provides that its scope and purpose are:

"This code is to *protect the housing stock of the community and is to protect the public health, safety and welfare* in all existing structures, residential and nonresidential, and on all existing premises by establishing minimum requirements and standards for premises, structures, equipment, and facilities for light, ventilation, space, heating, sanitation, protection from the elements, life safety, safety from fire and other hazards, and for safe and sanitary maintenance; fixing the responsibility of owners, operators and occupants; regulating the occupancy of existing structures and premises, and providing for administration, enforcement and penalties." (Emphasis added.) Section PM–101.2.

The intent of the city of Fostoria Property Maintenance Code is also expressly indicated in the Code itself:

"This code shall be construed to secure its expressed intent, which is to *ensure public health, safety and welfare* insofar as they are affected by the continued occupancy and maintenance of structures and premises. Existing structures and premises that do not comply with these provisions shall be altered or repaired to provide a minimum level of health and safety as required herein." (Emphasis added.) Section PM–101.3.

This expressed intent is reinforced particularly when we consider the section of the Code under which appellant was cited. Section PM–304 of the Code, titled Exterior Structure, provides:

"PM–304.1 General: The exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the *public health, safety or welfare.*" (Emphasis added.)

The Fostoria City Council made it explicitly clear that the intent and purpose behind adopting the BOCA National Property Maintenance Code was to protect the housing stock in the community and to ensure and protect the health, safety and welfare of that same community by regulating structures and premises within the political subdivision. The expressed overall intent of the city of Fostoria Property Maintenance Code, as well as the expressed intent of the particular section under which appellant was cited, supports this conclusion.

The court must interpret the Code and give meaning to the text therein in light of the intent and purpose expressed. The trial court engaged in such a process. In doing so, the trial court made the following findings:

"Now, the Court first notes for the record in order to narrow the issues that the City has not proven beyond a reasonable doubt that the failure of CSX Transportation, Incorporated, to paint the bridges poses any threat to the public health, safety or welfare of the City or the citizens of this community * * *.

"Furthermore, the city has not proven beyond a reasonable doubt that the Railroad's failure to paint the bridges would in any way impair or destroy the property values within the City of Fostoria * * *."

It is evident from the record that the trial court found the failure of appellant to paint the bridges did not pose any threat to the health, safety, or welfare of the community nor affect the property values within the city. Having made those factual determinations, the trial court considered whether the ordinance applied to the facts of this particular case:

"So the bottom line what the Court has to decide is does the City ordinance which is involved in this case, specifically Section 1355 of the Revised—of the Fostoria code which adopts the BOCA national property maintenance code, does it require that the exterior structures be painted solely for aesthetic reasons and nothing more."

The trial court found the text of the ordinance dispositive of the issue and made the following determination:

"[T]he intent of the legislature, City Council, enacted this to require structures to be painted, repainted when there is peeling, flaking or chipping, and that solely aesthetic reasons are the grounds for that requirement."

We believe that such a conclusion cannot be reconciled with the trial court's factual findings in light of the expressed scope, purpose, and intent of the Property Maintenance Code.

█ The conclusion that the city council intended for subsection PM–304.2 to apply to solely aesthetic considerations completely disregards the expressed intent of the enacting body. The city council stated in subsection PM–101.3 that the Code was to be construed to secure the expressed intent. The expressed intent of the Code is to ensure the public health, safety, and welfare of the community at least where structures and premises are concerned. The trial court found that the prosecution failed to prove by the requisite burden that the bridges in their current state posed any threat to the health, safety or welfare of the community. To then conclude that the Code was to be applied to purely

aesthetic concerns impermissibly enlarges the sweep of the ordinance beyond explicit limits set by the enacting body.

We hold that the city of Fostoria Property Maintenance Code, explicitly intended to protect and ensure the public health, safety, and welfare of the community, cannot be construed in light of the facts of this case to apply to the particular bridges that were found by the trial court to pose no threat to the health, safety, or welfare of the community nor affect the property values of that same community. Accordingly, appellant's fifth assignment of error is sustained. The judgment of the Fostoria Municipal Court is reversed. As this issue is dispositive of this case, it is unnecessary for us to reach the merits of the additional assignments of error.

*Judgment reversed*
*and cause remanded.*

SHAW and WALTERS, JJ., concur.