**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Diller v. Diller*, **Slip Opinion No. 2023-Ohio-1508.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1508

DILLER, APPELLEE, *v.* DILLER, COEXR. OF THE ESTATE OF THEODORE C. PENNO, APPELLEE;

PENNUCCI, INDIVIDUALLY AND AS COEXR. OF THE ESTATE OF THEODORE C. PENNO, ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Diller v. Diller*, Slip Opinion No. 2023-Ohio-1508.]**

*Appeal dismissed as having been improvidently accepted.*

(No. 2022-0058—Submitted January 10, 2023—Decided April 2, 2023.)

APPEAL from the Court of Appeals for Mercer County,

Nos. 10-21-03 and 10-21-04, 2021-Ohio-4252.

_____

{¶ 1} This cause is dismissed as having been improvidently accepted.

FISCHER, DEWINE, DONNELLY, BRUNNER, and DETERS, JJ., concur.

KENNEDY, C.J., dissents and would affirm the court of appeals' judgment.

STEWART, J., dissents, with an opinion.

_____

**STEWART, J., dissenting.**

**{¶ 2}** I disagree with the majority's decision to dismiss this appeal as having been improvidently accepted. We should answer the questions before us on the merits and in so doing, reverse the Third District Court of Appeals' determination that former R.C. 2107.52[1] fails to prevent a primary devise in a will from lapsing when the beneficiary predeceases the testator.

## Overview

**{¶ 3}** This case involves a dispute about a devise[2] to a beneficiary who died before the testator. The central question before this court is whether Ohio's antilapse statute that was in effect at the time of the testator's death prevented the devise from lapsing.

**{¶ 4}** The common-law rule is that a devise to a beneficiary who predeceases the testator lapses upon the beneficiary's death. *See* 1 Restatement of the Law 3d, Property: Wills & Other Donative Transfers, Section 1.2, Comment a (1999). The lapsed devise then becomes part of the testator's residual estate, which is distributed pursuant to the terms of a residuary clause contained in the testator's will or through intestate succession if there is no residuary clause. *See Margolis v. Pagano*, 39 Ohio Misc.2d 1, 3-4, 528 N.E.2d 1331 (C.P.1986); *Shalkhauser v. Beach*, 14 Ohio Misc. 1, 3, 233 N.E.2d 527 (P.C.1968).

---

1. The court of appeals' decision turned on its interpretation of former R.C. 2107.52(A)(3)(a), 2017 Sub.H.B. No. 595 (effective Mar. 22, 2019), which defined "devise" for purposes of the antilapse statute as an "alternative devise, a devise in the form of a class gift, or an exercise of a power of appointment." The definition of "devise" in R.C. 2107.52(A)(3)(a) was amended following the court of appeals' decision in this case. *See* 2022 Am.Sub.S.B. 202 (effective Apr. 3, 2023). Because the court of appeals' decision concerned the 2019 version of the statute, all references to "former R.C. 2107.52" contained herein refer to the 2019 version unless otherwise indicated.

2. The general definition of "devise" is "[t]he act of giving property by will" or "[t]he provision in a will containing such a gift." *Black's Law Dictionary* 567 (11th Ed.2019). However, the definition of this term set forth in former R.C. 2107.52 is at the heart of the dispute in this case.

**{¶ 5}** The common-law lapse rule originates from the understanding that a testator cannot gift property to a person who is deceased, because that person (i.e., the beneficiary) is unable to receive the gift. 1 Restatement, Section 1.2, Comment a. Although this may be a logical way to view a devise, depriving a deceased beneficiary of gifted property under this rule consequently stops the deceased beneficiary's heirs from inheriting the property that would have gone to the deceased beneficiary had he or she survived the testator. The common-law lapse rule has been criticized for this harsh result because it is entirely reasonable to assume that the testator would have understood when executing his or her will that in devising the property to a beneficiary, that property would or could be passed to the beneficiary's heirs upon the beneficiary's death. *See Woolley v. Paxson*, 46 Ohio St. 307, 314, 24 N.E. 599 (1889). In other words, it is logical to assume that a testator intends the heirs of a deceased beneficiary to eventually inherit the property that is the subject of a devise anyway. *See id.*; *see also Belardo v. Belardo*, 187 Ohio App.3d 9, 2010-Ohio-1758, 930 N.E.2d 862, ¶ 15 (8th Dist.). With this understanding, the Ohio legislature enacted the first "antilapse" law in 1840. *See Woolley* at 313-314. Although Ohio's antilapse law has been repealed, reenacted, and revised multiple times over the years, the essence of the law has remained more or less the same—it prevents a devise from lapsing under the common-law rule when a beneficiary under a will predeceases the testator. *See, e.g.*, *id.*; *see also West v. Aigler*, 127 Ohio St. 370, 376-377, 188 N.E. 563 (1933); *Cochrel v. Robinson*, 113 Ohio St. 526, 536, 149 N.E. 871 (1925).

**{¶ 6}** Since 1953, Ohio's antilapse statute has been codified in R.C. 2107.52. *See* Am.H.B. No. 1, 125 Ohio Laws 7 (recodifying the General Code, including the antilapse statute previously codified at G.C. 10504-73, into the Revised Code). Under that statute, if the devise is an individual devise (i.e., if the devise is not to a group or class of persons like "my children" or "my grandchildren"), a substitute gift is created in the beneficiary's surviving heirs, and

the surviving heirs are entitled to the property that the beneficiary would have been entitled to had the beneficiary survived the testator. *See* R.C. 2107.52(B).

{¶ 7} Turning to the facts of this case: In May 2019, Theodore Penno, a retired farmer who owned roughly 65 acres of farmland, died leaving a will that was validly executed in 1998. The will read in part:

> ITEM II. I hereby give, devise and bequeath my farm located in Butler Township, Mercer County, Ohio, and any interest that I may have in any farm chattel property to my **brother, JOHN PENNO.**
>
> ITEM III. All the rest, residue, and remainder of my property, real and personal, of every kind, nature, and description, wheresoever situated, which I may own or have the right to dispose of at the time of my decease, I give, devise, and bequeath equally to my **brother, JOHN PENNO** and my **sister, MARY ANN DILLER,** absolutely and in fee simple, share and share alike therein, per stirpes.

(Underlining, boldface, and capitalization sic.)

{¶ 8} When Theodore executed the will, he was farming the Butler Township land with his brother, John, and John's son, David Penno. John died in 2016—three years before Theodore died. John was survived by appellants—his son, David, and his daughter, Linda Pennucci. Appellee Mary Ann Diller[3] was Theodore's only surviving sibling.

---

3. Mary Ann's daughter, Phyllis Diller, in her capacity as coexecutor of the estate of Theodore C. Penno, is also an appellee.

**{¶ 9}** Shortly after Theodore's will was admitted to probate, Mary Ann filed a complaint in the probate court seeking a declaratory judgment and construction of the will. Mary Ann argued that she had an interest in the farmland that Theodore had devised to their deceased brother, John, because the devise to John lapsed when John died. Mary Ann argued that the law required that a lapsed devise be included in the testator's residual estate and distributed in accordance with the terms of the will's residuary clause. In this case, the residuary clause is in Item III of the will; it provides that Theodore's property that is not otherwise specifically devised shall be shared equally between Mary Ann and John.

**{¶ 10}** Mary Ann additionally argued that Ohio's antilapse statute did not save the devise to John in Item II of the will, because it was a "primary devise" that did not fall within the meaning of "devise" found in that statute. *See* former R.C. 2107.52(A)(3)(a), 2018 Sub.H.B. No. 595. John's children opposed Mary Ann's assertions and asked that the farmland be distributed only to them as John's surviving heirs.

**{¶ 11}** The probate court determined that the devise in Item II did not lapse and that John's children were entitled to the farmland. Mary Ann appealed to the Third District. She argued that the devise to John was a primary devise and that because Ohio's antilapse statute protected only an alternative devise, a devise in the form of a class gift, or an exercise of a power of appointment, *see id.*, the statute did not apply in this case.

**{¶ 12}** The court of appeals agreed. The court began its analysis by broadly defining the different types of testamentary gifts:

> A "primary devise" is a "devise to the first person named as taker."
> PRIMARY DEVISE, *Black's Law Dictionary* (11th Ed.2019). In
> contrast, an "alternative devise" is a "devise that, under the terms of
> the will, is designed to displace another devise if one or more

5

specified events occur." ALTERNATIVE DEVISE, *Black's Law Dictionary* (11th Ed.2019). An alternative devise necessarily follows a primary devise. "For example, a devise of 'Blackacre to A, but if A does not survive me then to B' names A as the recipient of the primary devise and B as the recipient of the * * * alternative devise." PRIMARY DEVISE, *Black's Law Dictionary* (11th Ed.2019). A "class gift" is a "gift to a group of persons, uncertain in number at the time of the gift but to be ascertained at a future time, who are all to take in definite proportions, the share of each being dependent on the ultimate number in the group." CLASS GIFT, *Black's Law Dictionary* (11th Ed.2019). Finally, a "power of appointment" is a "power created or reserved by a person having property subject to disposition, enabling the donee of the power to designate transferees of the property or shares in which it will be received; esp., a power conferred on a donee by will * * * to select and determine one or more recipients of the donor's estate." POWER OF APPOINTMENT, *Black's Law Dictionary* (11th Ed.2019).

(Capitalization sic; footnote omitted.) 2021-Ohio-4252, 182 N.E.3d 370, ¶ 35.

{¶ 13} The court of appeals then turned to the language of former R.C. 2107.52(A)(3)(a), which provided, "As used in this section: 'Devise' means an alternative devise, a devise in the form of a class gift, or an exercise of a power of appointment." However, the definition provided in former R.C. 2107.52(A)(3)(a) did not explicitly mention a "primary devise." In interpreting the statute, the court of appeals determined that because former R.C. 2107.52(A)(3)(a) used the word "means" as opposed to "includes" and because the word "means" excludes any meaning that is not specifically stated in the definition that follows—as opposed to

the word "includes," which connotes there are other items not specifically listed that are also included within the definition—the antilapse law did not apply to a primary devise, because a primary devise was not specifically listed in the definition of "devise" found in former R.C. 2107.52(A)(3)(a). 2021-Ohio-4252 at ¶ 38-39. The Third District reached this conclusion despite acknowledging (1) that its decision "abrogates the historical understanding of the antilapse statute," *id.* at ¶ 1, (2) that it doubted whether the legislature ever intended this result, *id.* at ¶ 48, and (3) that its reading of former R.C. 2107.52(A)(3)(a) would frustrate the purpose of the antilapse statute in many cases because it suspected that "a great many wills in this state contain at least one primary devise," *id.* at ¶ 53.

{¶ 14} David and Linda appealed, and we accepted the appeal on the following two propositions of law:

> Proposition of Law No. 1: R.C. §2107.52, Ohio's Anti-Lapse Statute, applies to the primary devise of a testator's last will and testament, and such application is not limited to only an alternative devise, class gift or power of appointment.

> Proposition of Law No. 2: Reading R.C. §2107.52 to preclude application to a primary devise creates an absurd result, which was not intended by the [G]eneral [A]ssembly in its revision of the statute.

*See* 166 Ohio St.3d 1467, 2022-Ohio-1163, 185 N.E.3d 104.

## Discussion

{¶ 15} The Third District's decision leads to a result that was never intended by the legislature and one that is absurd given the history of the antilapse statute and what it was always designed to protect. For this reason alone, the court of appeals' decision should be reversed.

**{¶ 16}** The primary goal of statutory interpretation is to determine and give effect to the intent of the legislature. *Christe v. GMS Mgt. Co., Inc.*, 88 Ohio St.3d 376, 377, 726 N.E.2d 497 (2000). We seek first to determine legislative intent from the plain language of a statute, *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 18, the general rule being that "[i]f the meaning of the statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary," *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 660 N.E.2d 463 (1996). An exception to the plain-language rule exists, however, when the plain language of the statute would lead to absurd results that the legislature obviously did not intend. *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 22; Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 239 (2012) ("The doctrine of absurdity is meant to correct obvious *unintended* dispositions, not to revise purposeful dispositions that, in light of other provisions of the applicable code, make little if any sense" [emphasis sic]). A court may correct such an absurdity when it is "reparable by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error." Scalia & Garner at 238. The absurdity doctrine applies in full force here.

**{¶ 17}** To begin, it is well understood that antilapse statutes, as a general matter, apply to primary devises. *See* 1 Restatement of the Law 3d, Property: Wills & Donative Transfers, Section 5.5, Comment k (1999). Indeed, nearly 200 years have passed since the first antilapse law was enacted in Ohio in 1840. *See Woolley*, 46 Ohio St. at 313, 24 N.E. 599. And in that time, there appears to have been little to no dispute about whether the antilapse law should apply to a primary devise until the issue was raised in the present case. *See, e.g.*, *Larwill's Exrs. v. Ewing*, 73 Ohio St. 177, 76 N.E. 503 (1905) (applying a much older version of the antilapse law to a primary devise without question). That the issue has now arisen at all appears to

8

be because of a change in the law that occurred in 2012 when R.C. 2107.52 was repealed and reenacted pursuant to 2011 Sub.S.B. No. 117 to include, among other things, the definition of "devise." Prior to this legislative act, no explicit definition of "devise" could be found in the statute. The statute thus would have taken on the ordinary meaning of the term, which, of course, would have included a primary devise. *See State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, 6 N.E.3d 23, ¶ 46, citing R.C. 1.42 (undefined terms in a statute are to be given their plain, common, and ordinary meaning); *see also Black's Law Dictionary* 567 (11th Ed.2019) (defining "devise" as "[t]he act of giving property by will" or "[t]he provision in a will containing such a gift"); *Niles v. Gray*, 12 Ohio St. 320, 328 (1861) (recognizing that a primary devise is a provision in a will that gifts property to a specific person to the exclusion of all others, unless a contingent or alternative devise applies).

{¶ 18} Also significant to the year 2012 was the fact that the General Assembly made certain updates to Ohio's trust laws. By way of background, in *Dollar Savs. & Trust Co. of Youngstown v. Turner*, 39 Ohio St.3d 182, 185, 529 N.E.2d 1261 (1988), this court determined that R.C. 2107.52 applied to trusts, in addition to wills. In 1992, in an apparent statutory override of that decision, the General Assembly amended R.C. 2107.01 to clarify that the antilapse statute applied only to wills and not to trusts.[4] *See* Sub.H.B. No. 427, 144 Ohio Laws, Part IV, 5447, 5457-5458; *see also Polin v. Baker*, 92 Ohio St.3d 563, 566, 752 N.E.2d 258 (2001), fn. 1. Then, in 2011, the General Assembly decided that trusts should be protected from lapsing, and it enacted R.C. 5808.19, *see* 2011 Sub.S.B. No. 117 (effective Mar. 22, 2012), which now serves as Ohio's antilapse statute for trusts. Importantly, R.C. 5808.19 was enacted as part of the same legislation that reenacted

---

4. The revision to R.C. 2107.01 stated: "In Chapters 2101. to 2131. of the Revised Code, * * * 'will' does not include inter vivos trusts or other instruments that have not been admitted to probate." Sub.H.B. No. 427, 144 Ohio Laws, Part IV, 5447, 5457.

R.C. 2107.52. In what appears to have been an effort to create some uniformity between both antilapse statutes—the one for wills and the one for trusts—the General Assembly included some of the same definitions and other similar language in both statutes. *See* 2011 Sub.S.B. No. 117; *compare* R.C. 2107.52 *with* 5808.19. The new definitions and language appear to have been modeled after the Uniform Probate Code ("UPC"). *See* UPC 2-603 and 2-707. Indeed, UPC 2-603(A)(5) defines "devise" for purposes of the UPC's model antilapse statute for wills as follows: " 'Devise' *includes* an alternative devise, a devise in the form of a class gift, and an exercise of a power of appointment." (Emphasis added.)

{¶ 19} Given the nearly 200-year history of Ohio's antilapse statute applying to primary devises without any apparent question, as well as the context in which the 2012 changes to R.C. 2107.52 arose, the only reasonable conclusion to reach here is that the General Assembly's use of the word "means" rather than "includes" in the definition of "devise" that was found in former R.C. 2107.52(A)(3)(a), was nothing more than a ministerial mistake. In other words, the General Assembly intended former R.C. 2107.52(A)(3)(a) to expand the definition of "devise" beyond referring to merely a primary devise and to *include* the three specific types of testamentary gifts listed therein—an alternative devise, a class gift, and an exercise of a power of appointment. But by no means did the General Assembly intend the enactment to limit application of the antilapse statute to *only* these gifts and at the same time *exclude* a primary devise. That this is true is made all the more obvious by the immediate steps the General Assembly has taken to clarify the law since the Third District issued its decision in this case and this court accepted the appeal.

{¶ 20} Following the appellate court's decision and our acceptance of this appeal, the General Assembly rather quickly amended the definition of "devise" in R.C. 2107.52(A)(3)(a). As of April 3, 2023, the effective date of the amendment, the statute reads: " 'Devise' *includes a primary devise*, an alternative devise, a

devise in the form of a class gift, and an exercise of a power of appointment." (Emphasis added.) R.C. 2107.52(A)(3)(a), 2022 Am.Sub.S.B. No. 202. The General Assembly also gave the amendment retroactive effect "to the fullest extent permitted under the Ohio Constitution." R.C. 2107.52(A)(3)(b), 2022 Am.Sub.S.B. No. 202. The recent amendment to the definition of "devise" as well as the General Assembly's stated intent to make the amendment retroactive make crystal clear that the antilapse statute protects—and as a practical matter always has protected—a primary devise from lapsing.

{¶ 21} Because the majority dismisses this appeal as having been improvidently accepted rather than answering the questions before us, I dissent.

_____

Howell, Gast-Schlater & Co., L.P.A., and Paul E. Howell, for appellee Mary Ann Diller.

Faber & Associates, L.L.C., John R. Willamowski Jr., and Travis J. Faber, for appellee Phyllis Diller, coexecutor of the estate of Theodore C. Penno.

Cory, Meredith, Witter & Smith, L.P.A., Ashley R. Doty, J. Alan Smith, and Dalton J. Smith, for appellants, Linda Pennucci, individually and as coexecutor of the estate of Theodore C. Penno, and David Penno.

Koesters Law Office and Judy A. Koesters, cocounsel for appellants Linda Pennucci, individually, and David Penno.

Knapke Law and Jeffrey P. Knapke, cocounsel for appellant Linda Pennucci, as coexecutor of the estate of Theodore C. Penno.

_____