[Cite as *Diller v. Diller*, 2021-Ohio-4252.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY


MARY ANN DILLER,

    PLAINTIFF-APPELLANT,

                                CASE NO.  10-21-03

    v.

PHYLLIS DILLER, CO-EXECUTOR,

    DEFENDANT-APPELLANT.
    -and-                               O P I N I O N

LINDA PENNUCCI ET. AL.,

    DEFENDANTS-APPELLEES.


MARY ANN DILLER,

    PLAINTIFF-APPELLANT,

                                CASE NO.  10-21-04

    v.

PHYLLIS DILLER, CO-EXECUTOR,

    DEFENDANT-APPELLANT.
    -and-                               O P I N I O N

LINDA PENNUCCI ET. AL.,

    DEFENDANTS-APPELLEES.

Case No. 10-21-03, 10-21-04

**APPEARANCES:**

*Paul E. Howell* **for Appellant, Mary Ann Diller**

*Travis J. Faber and John R. Willamowski, Jr.* **for Appellant,
Phyllis Diller**

*J. Alan Smith and Ashley R. Doty* **for Appellees**

**MILLER, J.**

{¶1} Plaintiff-appellant, Mary Ann Diller, appeals the March 18, 2021 judgment of the Mercer County Court of Common Pleas, Probate Division. Defendant-appellant, Phyllis Diller, in her capacity as co-executor of the estate of Theodore C. Penno, appeals the same judgment.[1] In this appeal, the court is called upon as the first court to interpret the meaning of the term "devise" as used in Ohio's anti-lapse statute, R.C. 2107.52. In doing so, we find ourselves compelled to

---

[1] This case was erroneously processed as two separate appeals. For this reason, there are two judgment entries and two case numbers, even though these appeals are based on one underlying judgment and one record.

-2-

Case No. 10-21-03, 10-21-04

interpret the statute precisely as written by the General Assembly even though the legislative enactment abrogates the historical understanding of the anti-lapse statute.

## I.  Facts & Procedural History

{¶2} On May 15, 2019, Theodore C. Penno died testate at the age of 78. Theodore's will, which he executed on February 10, 1998, provides in relevant part:

> **ITEM II.**    I hereby give, devise and bequeath my farm located in Butler Township, Mercer County, Ohio, and any interest that I may have in any farm chattel property to my **brother, JOHN PENNO.**
>
> **ITEM III.**    All the rest, residue, and remainder of my property, real and personal, of every kind, nature, and description, wheresoever situated, which I may own or have the right to dispose of at the time of my decease, I give, devise, and bequeath equally to my **brother, JOHN PENNO** and my **sister, MARY ANN DILLER,** absolutely and in fee simple, share and share alike therein, per stirpes.
>
> * * *
>
> **ITEM V.**    I hereby appoint my **niece, LINDA PENNUCCI** and my **niece, PHYLLIS DILLER, or the survivor of them,** as Co-Executors of this my Last Will and Testament.

(Capitalization, boldface, and underlining sic.).  Although Mary Ann Diller survived Theodore, John Penno predeceased Theodore on July 18, 2016, leaving defendants-appellees, David Penno and Linda Pennucci, as his only surviving children.

{¶3} On August 27, 2019, Theodore's will was admitted to probate.  That same day, Phyllis Diller and Linda were appointed to serve as co-executors of Theodore's estate pursuant to Item V of Theodore's will.

-3-

{¶4} On October 23, 2019, Mary Ann filed a complaint for declaratory judgment and for construction of Theodore's will. Mary Ann named Phyllis, Linda, and David as defendants in the action. Phyllis was named as a defendant solely in her capacity as co-executor. Linda was named as a defendant both individually and in her capacity as co-executor. David was named as a defendant solely in his individual capacity. In her complaint, Mary Ann averred that Theodore's will, "construed as a whole and considering its specific language, evidences [Theodore's] intent that the gift to [John] in Item II was to lapse in the event [John] died before [Theodore]." That is, she claimed that Theodore intended for the anti-lapse statute, R.C. 2107.52, not to apply to Item II of his will. Mary Ann argued that because John predeceased Theodore and Theodore did not intend for R.C. 2107.52 to apply to Item II of his will, the gift to John in Item II lapsed. She maintained that the gift to John in Item II of the will fell into the residue of Theodore's estate and that the gift must consequently be distributed pursuant to the residuary clause contained in Item III of the will.

{¶5} Phyllis, David, and Linda then filed their answers to Mary Ann's complaint. In addition, David joined with Linda, in her individual capacity, to file a counterclaim for declaratory judgment. In their counterclaim, David and Linda averred that R.C. 2107.52 applies to Item II of Theodore's will and that the gift to

John in Item II of the will should therefore be distributed to them as John's surviving descendants.

{¶6} On December 4, 2019, Mary Ann filed a reply to David and Linda's counterclaim. In her reply, Mary Ann introduced a new argument to support her proffered construction of Theodore's will. Specifically, she asserted that the gift to John in Item II of Theodore's will is not a "devise" as defined in R.C. 2107.52. According to Mary Ann, because the gift to John in Item II of Theodore's will does not qualify as a "devise" within the meaning of R.C. 2107.52(A)(3), R.C. 2107.52(B)(2) cannot be applied to Item II of the will, regardless of whether Theodore intended for it to apply.

{¶7} Because the parties agreed that the trial court could resolve the competing claims without conducting an evidentiary hearing, the trial court promptly set a briefing schedule. On January 17, 2020, Mary Ann filed a memorandum in support of her claims for declaratory judgment and construction of Theodore's will. In her memorandum in support, Mary Ann further developed the two separate lines of argument first set forth in her complaint and reply. With respect to her contention that the gift to John in Item II of Theodore's will does not constitute a "devise," Mary Ann clarified that she was arguing that the gift to John was a "primary devise," which does not meet R.C. 2107.52(A)(3)'s definition of "devise." The parties then exchanged responses and reply memoranda. Notably, in

her response, Phyllis fully endorsed the arguments in Mary Ann's original memorandum in support.

{¶8} On May 21, 2020, oral arguments were held before a magistrate.  On December 7, 2020, the magistrate issued a decision declining to adopt Mary Ann and Phyllis's interpretation of R.C. 2107.52 and their construction of Theodore's will.  The magistrate concluded that R.C. 2107.52 applies to the gift to John in Item II of Theodore's will and that Theodore's will does not contain any expression of a contrary intent.  Accordingly, the magistrate recommended that the gift to John in Item II of Theodore's will be distributed in equal shares to David and Linda.

{¶9} After being granted extensions to file objections, Mary Ann and Phyllis each filed objections to the magistrate's decision on December 28, 2020.  The trial court heard oral arguments on Mary Ann's and Phyllis's objections on March 11, 2021.  On March 18, 2021, the trial court, in a judgment entry consisting mostly of its own de novo analysis, rejected Mary Ann's and Phyllis's arguments.  The trial court concluded that R.C. 2107.52 applies to the gift to John in Item II of Theodore's will and that "a substitute gift is created in Item II" in favor of David and Linda.  Accordingly, the trial court ordered that David and Linda "shall take title to the farm chattels and real estate as tenants in common."

## II. Assignments of Error

{¶10} On April 7, 2021, Mary Ann filed a notice of appeal. She raises the following assignments of error for our review:

> **1. The trial court erred by misinterpreting Ohio's Anti-Lapse Statute's definition of "devise" in R.C. 2107.52(A)(3) and thereby concluding that the Statute applied to the testamentary gift which would have otherwise lapsed under Item II of the testator's will. (See trial court's "Judgment Entry", pp. 3 and 4).**
>
> **2. The trial court erred by misconstruing the Anti-Lapse Statute's "contrary intent" provision of R.C. 2107.52(B)(2) and failing to follow Ohio common law to ascertain whether it appeared in the will itself that the testator never intended any substitute gift under Item II. (See trial court's "Judgment Entry", pp. 2 and 3).**

{¶11} On April 8, 2021, Phyllis filed a separate notice of appeal. She raises the following assignments of error for our review:

> **1. The Trial Court erred by applying Ohio's Anti-Lapse Statute (R.C. § 2107.52) to Item II of the Last Will and Testament of Theodore C. Penno.**
>
> **2. The Trial Court erred in finding that prior versions of Ohio's Anti-Lapse Statute (R.C. § 2107.52) apply to Item II of the Last Will and Testament of Theodore C. Penno.**
>
> **3. The Trial Court erred by applying facts outside of the four corners of the will to determine the intent of the testator.**

{¶12} Mary Ann's assignments of error and Phyllis's assignments of error overlap in many respects. For ease of discussion, we first address Phyllis's second assignment of error. We then address Mary Ann's and Phyllis's first assignments

of error together. Finally, if necessary, we will consider Mary Ann's second assignment of error and Phyllis's third assignment of error together.

### III. Discussion

**A.** **Phyllis's Second Assignment of Error: Which version of R.C. 2107.52 applies in this case?**

{¶13} In her second assignment of error, Phyllis argues that the trial court did not apply the appropriate version of R.C. 2107.52 when determining whether the gift to John in Item II of Theodore's will lapsed. Specifically, Phyllis argues that the 2019 version of R.C. 2107.52—the version in effect at the time of Theodore's death—controls in effectuating the provisions of Theodore's will, but that the trial court erroneously applied the 1992 version of R.C. 2107.52—the version that was in effect when Theodore executed his will.

### i. The Common-Law Rule of Lapse & the History of Ohio's Anti-lapse Statutes

{¶14} At common law, a devise[2] given to a person who predeceases the testator is said to "lapse." The common-law rule of lapse rests on the proposition that because "[a] donative transfer cannot be made to a deceased person" and "probate transfers take place at the decedent's death, [probate transfers] cannot be made to an individual who fails to survive the decedent." Restatement of the Law

---

[2] In our discussion of Phyllis's second assignment of error, we use the word "devise" in its ordinary modern sense—"[t]he act of giving property by will" or "[t]he provision in a will containing such a gift." DEVISE, *Black's Law Dictionary* (11th Ed.2019). "Although this term traditionally referred to gifts of real property[,] * * * in American usage the term has been considerably broadened. In both the Restatement of Property and the Uniform Probate Code, a disposition of any property by will is a devise. In the United States today, it is pedantry to insist that the noun devise be restricted to real property." *Id.*

3d, Property, Wills & Donative Transfers, Section 1.2, Comment a (1999). A lapsed

devise does not become part of a predeceased devisee's estate, to be distributed

among the predeceased devisee's heirs or beneficiaries. Instead, depending on the

circumstances, the lapsed devise either falls into the residue of the testator's estate,

where it is distributed pursuant to the terms of a residuary clause, or passes to the

testator's heirs through intestate succession.[3] *See Margolis v. Pagano*, 39 Ohio

Misc.2d 1, 3-4 (C.P.1986); *Shalkhauser v. Beach*, 14 Ohio Misc. 1, 3 (P.C.1968).

{¶15} Despite its historical pedigree, the common-law rule of lapse has long

been criticized for the harsh results it often produces, especially when applied to

wills containing a devise to a predeceasing child or close relative of the testator. To

mitigate the severity of the common-law rule, many states, including Ohio, have

enacted "anti-lapse" statutes abrogating or modifying the rule. In interpreting and

applying an early Ohio anti-lapse statute, the Supreme Court of Ohio explained:

> The rule as to the lapsing of devises and legacies that prevailed before
> the statute defeated, in most cases, the intention of the testator. He
> generally made his will with reference to the objects of his bounty as
> they existed at the time, and as though his will took effect at the date
> of its execution, not apprehending that a lapse would occur in case
> any of them should die before himself, unless some express
> disposition should be made in anticipation of such event. The statute
> was passed to remedy such disappointments, and should receive a

---

[3] A third outcome presents when a devise is made to a class of persons (e.g., "to my children") rather than to a specifically named individual (or individuals). Under the common law, "if a testamentary gift is made to a class, and a member of the class predeceased the testator, the share of the gift that would have passed to the predeceased class member instead passes to the other members of the class." Alan Newman, *When the Beneficiary Predeceases: A Primer on Ohio's Wills and Trusts Antilapse Statutes*, 27 Ohio Prob. L.J. NL 4 (March/April 2017). *See Polen v. Baker*, 4th Dist. Pickaway No. 99 CA 34, 2000 WL 776931, *3 (May 31, 2000), fn. 4.

liberal construction, so as to advance the remedy and suppress the mischief.  It, among other things, provides that, where a devise is made to a child or other relative of the testator who dies before the testator, the issue of such object of his bounty shall take the portion devised to such child or relative.  Nothing is more just and conformable to the probable intention of the testator in every instance. The fact that the child or relative is not mentioned by name should not defeat the application of the statute where the language applied to the facts, as they were at the execution of the will, designates a child or relative as an object of the testator's bounty with as much certainty as if it were mentioned by name.

*Woolley v. Paxson*, 46 Ohio St. 307, 314 (1889).

{¶16} Ohio's anti-lapse statute has been repealed, reenacted, and revised many times since its original enactment in 1840.  *See id.* at 313; *see also West v. Aigler*, 127 Ohio St. 370, 376-377 (1933); *Cochrel v. Robinson*, 113 Ohio St. 526, 536 (1925).  Since 1953, Ohio's anti-lapse statute pertaining to wills has been codified at R.C. 2107.52.[4]  Questions concerning the applicability of two of the most recent versions of R.C. 2107.52, the 1992 version and the 2019 version,[5] are the subject of Phyllis's second assignment of error.

**ii.  By its own terms, the 2019 version of R.C. 2107.52 applies in effectuating the provisions of Theodore's will because he died after March 22, 2012.**

---

[4] "R.C. 2107.52 is to be distinguished from R.C. 5808.19, Ohio's anti-lapse statute pertaining to trusts." *In re Estate of Gaskill*, 3d Dist. Allen No. 1-19-15, 2019-Ohio-4936, ¶ 22, fn. 2.
[5] The issues presented in Phyllis's second assignment of error arise because the version of R.C. 2107.52 in effect at the time of Theodore's death, i.e., the 2019 version, is substantially different from the version of R.C. 2107.52 in effect at the time Theodore executed his will, i.e., the 1992 version.  We note, however, that these significant revisions were first implemented in the 2012 version of R.C. 2107.52, not the 2019 version. *See* R.C. 2107.52 (Mar. 22, 2012).  Accordingly, where we later refer to features of the "2019 version of R.C. 2107.52" or the "2019 revisions," we refer mostly to changes actually made in the 2012 version. Nevertheless, because the differences between the 2012 version and the 2019 version are not relevant to this case, we need not confuse the matter further by alternating references to the 2012 version and the 2019 version.

{¶17} Phyllis insists the trial court erroneously applied the 1992 version of R.C. 2107.52, pointing to the fact the trial court "discuss[ed] and even quote[d] the [1992 version] in effect at the time [Theodore] executed his will in 1998." She notes that the trial court also discussed the 2019 version of R.C. 2107.52, but that it did not "distinguish[] which of the two versions of the statute was relevant to [the] interpretation of Item II of [Theodore's] will." However, while Phyllis accurately observes that the trial court discussed and quoted both versions of R.C. 2107.52, it is clear to us that the trial court did not apply the 1992 version of R.C. 2107.52 in preference to the 2019 version. First, only after quoting and applying the 2019 version of R.C. 2107.52 did the trial court remark in its judgment entry that "a plain reading of [the 1992 version of R.C. 2107.52] * * * produces the same result." The trial court then stated that there is a "similar legislative intent" between the two versions of R.C. 2107.52. Thus, to the extent that the trial court looked to the 1992 version of R.C. 2107.52, it did so only to confirm a conclusion it had already reached by applying the 2019 version of the statute.

{¶18} Nevertheless, because David and Linda maintain that this court must look to the 1992 version of R.C. 2107.52 to decide Theodore's intent when he executed his will and that "no interpretation of the * * * 2019 revisions [is] necessary to appropriately decide these issues," we first clarify how each version of

-11-

R.C. 2107.52 may be relevant to our analysis. While both versions might potentially be relevant to the outcome of this case, each would ultimately play a different role.

{¶19} First, the 2019 version of R.C. 2107.52 applies in determining what effect to give to Item II of Theodore's will. Division (F) of the 2019 version of R.C. 2107.52 provides that "[t]his section applies to wills of decedents who die on or after March 22, 2012." By referring to date of death, rather than to date of will execution, this division evinces a clear intention for the provisions of the 2019 version of R.C. 2107.52 to apply to the wills of all decedents who die on or after March 22, 2012, even if a particular decedent's will was executed many years before that date.

{¶20} In addition, long-settled principles of the law of wills reinforce that the 2019 version of R.C. 2107.52 controls in giving effect to Item II of Theodore's will. Because "the right to dispose of property by will [is] purely a statutory right, there is unlimited legislative power to regulate and restrict by general laws the exercise of that right to make a will, at least until the will becomes effective." *Sherman v. Johnson*, 159 Ohio St. 209, 219 (1953). It is well established that "a will is ambulatory and takes effect only upon the death of the testator." *In re Emery*, 59 Ohio App.2d 7, 11 (1st Dist.1978), citing *Patton v. Patton*, 39 Ohio St. 590 (1883). Therefore, "[i]nasmuch as a will speaks not from the time of its execution but from the time of the death of the testator, the law in force at the time of the

testator's death, rather than that existing when the will was executed, or which was thereafter enacted, governs the rights of devisees under the will." *Parrett v. Paul*, 115 Ohio App. 488, 489 (3d Dist.1962). *See Cent. Trust Co. of Northern Ohio, N.A. v. Smith*, 50 Ohio St.3d 133, 137 (1990), fn. 2; *Fifth Third Bank v. Harris*, 127 Ohio Misc.2d 1, 5 (P.C.2003) ("[T]he testator is presumed to know that future statutory changes could affect the distribution called for in the will * * *."). Here, Theodore died on May 15, 2019—approximately two months after the March 22, 2019 effective date of the 2019 version of R.C. 2107.52. Consequently, under the plain terms of the 2019 version of R.C. 2107.52 and in accordance with the law of wills, we are obligated to apply the 2019 version of R.C. 2107.52 in determining the effect to be given to Item II of Theodore's will.

{¶21} Nonetheless, the 1992 version of R.C. 2107.52 becomes pertinent if we should reach the question of Theodore's intent with respect to Item II of his will. Although a will speaks "from the death of [the] testator as to its effect and operation," courts should refer to the law as it existed when the will was executed when ascertaining the testator's intention. *Cent. Trust Co.* at 137, fn. 2; *Wendell v. AmeriTrust Co., N.A.*, 69 Ohio St.3d 74, 76 (1994). *See* 31 Ohio Jurisprudence 3d, Decedents' Estates, Section 387 (2021) ("In the construction of a will, the testator's intention must be determined as of the time of the making or execution of the will, because that is the law that frames the intent of the testator, although the law that

governs the validity and effect of the will is the law applicable at the time of the testator's death."). Where the law in effect at the time of the testator's death varies from the law in effect at the time that the testator's will was executed, the issue becomes whether it is possible to effectuate the testator's intent, as informed by the law in place at the execution of the testator's will, under the law in place at the time of the testator's death. *See Wendell* at 76-77.

{¶22} We find the trial court properly applied the law in effect at the time of Theodore's death, i.e., the 2019 version of R.C. 2107.52. Accordingly, Phyllis's second assignment of error is overruled.

**B. Mary Ann's and Phyllis's First Assignments of Error: Is the gift to John in Item II of Theodore's will a "devise" as defined by R.C. 2107.52(A)(3), from which a substitute gift can be created in favor of David and Linda?**

{¶23} In their respective first assignments of error, Mary Ann and Phyllis argue that the trial court erred by concluding that the substitute-gift provisions of R.C. 2107.52 apply to the gift to John in Item II of Theodore's will. As we explained in our discussion of Phyllis's second assignment of error, the 2019 version of R.C. 2107.52[6] applies in determining what effect should be given to Theodore's will. Mary Ann and Phyllis's argument is based on the following language in R.C. 2107.52:

(A)    As used in this section:

---

[6] Unless otherwise stated, all further references to R.C. 2107.52 are to the 2019 version of R.C. 2107.52.

* * *

(3) "Devise" means an alternative devise, a devise in the form of a class gift, or an exercise of a power of appointment.

* * *

(B)

* * *

(2) Unless a contrary intent appears in the will, if a devisee fails to survive the testator and is a grandparent, a descendant of a grandparent, or a stepchild of either the testator or the donor of a power of appointment exercised by the testator's will, * * * the following applies:

(a) If the devise is not in the form of a class gift and the deceased devisee leaves surviving descendants, a substitute gift is created in the devisee's surviving descendants. The surviving descendants take, per stirpes, the property to which the devisee would have been entitled had the devisee survived the testator.

R.C. 2107.52(A)(3), (B)(2)(a).

{¶24} Mary Ann and Phyllis recognize that if R.C. 2107.52 applies to the gift to John in Item II of Theodore's will, the gift would be dealt with under R.C. 2107.52(B)(2)(a) and a substitute gift would be created in favor of David and Linda. This is because (1) John predeceased Theodore; (2) as Theodore's brother, John is a descendant of a grandparent of Theodore; (3) the gift in Item II is to an individual rather than in the form of a class gift; and (4) John left David and Linda as his surviving descendants.

{¶25} However, Mary Ann and Phyllis contend that R.C. 2107.52 does not, and in fact could never, apply to the gift to John in Item II of Theodore's will. According to Mary Ann and Phyllis, a prerequisite for the creation of a substitute gift under R.C. 2107.52(B)(2)(a) is the existence of a "devise." Stated differently, they maintain that a substitute gift can only be created from a testamentary gift that qualifies as a "devise" and that a testamentary gift that does not qualify as a "devise" cannot beget a substitute gift. Mary Ann and Phyllis argue that the word "devise," as used in R.C. 2107.52(B)(2)(a), should not be given its usual meaning. Instead, Mary Ann and Phyllis claim, the word "devise" in R.C. 2107.52(B)(2)(a) clearly and unambiguously derives its meaning from the definition of "devise" in R.C. 2107.52(A)(3). Hence, Mary Ann and Phyllis argue that a substitute gift cannot be created from a testamentary gift under R.C. 2107.52(B)(2)(a) unless the testamentary gift constitutes a "devise" as defined in R.C. 2107.52(A)(3). Applying this line of reasoning to the facts of this case, Mary Ann and Phyllis maintain that a substitute gift cannot be created from the gift to John in Item II of Theodore's will because the gift is not a "devise" as defined in R.C. 2107.52(A)(3).

{¶26} Accordingly, to resolve this case, we must first determine whether R.C. 2107.52(B)(2)(a) is meant to incorporate R.C. 2107.52(A)(3)'s definition of "devise" or whether some other meaning of the word "devise" is intended in R.C. 2107.52(B)(2)(a). If we conclude that the word "devise" in R.C. 2107.52(B)(2)(a)

is supposed to take its signification from R.C. 2107.52(A)(3), we must then ascertain the meaning of R.C. 2107.52(A)(3)'s definition of "devise." Finally, we must determine the extent to which a court should apply R.C. 2107.52(A)(3)'s definition of "devise" when deciding whether a testamentary gift is a "devise" from which a substitute gift can be created under R.C. 2107.52(B)(2)(a).

**i. General Principles of Statutory Interpretation**

{¶27} The issues presented in Mary Ann's and Phyllis's first assignments of error are primarily issues of statutory interpretation. "The interpretation of a statute is a question of law that we review de novo." *Stewart v. Vivian*, 151 Ohio St.3d 574, 2017-Ohio-7526, ¶ 23. "De novo review is independent and without deference to the trial court's judgment." *City Rentals, Inc. v. Kesler*, 191 Ohio App.3d 474, 2010-Ohio-6264, ¶ 11 (3d Dist.).

{¶28} The goal of statutory interpretation is to ascertain and give effect to the General Assembly's intent in enacting the statute. *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, ¶ 9. "The intent of the General Assembly must be determined primarily from the language of the statute itself." *Stewart* at ¶ 24. This is because we must "presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Natl. Bank v. Germain*, 503 U.S. 249, 253-254, 112 S.Ct. 1146 (1992). "When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the

General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, ¶ 12.

> "In the case of such unambiguity, it is the established policy of the courts to regard the statute as meaning what it says, and to avoid giving it any other construction than that which its words demand. The plain and obvious meaning of the language used is not only the safest guide to follow in construing it, but it has been presumed conclusively that the clear and explicit terms of a statute expresses [sic] the legislative intention, so that such plain and obvious provisions must control."

(Bracketed material in original.) *Jasinsky v. Potts*, 153 Ohio St. 529, 534 (1950), quoting 50 American Jurisprudence 2d, Section 225, at 205 (1944). Where the meaning of a statute is plain and unambiguous, the statute "'is to be applied, not interpreted.'" *McConnell v. Dudley*, 158 Ohio St.3d 388, 2019-Ohio-4740, ¶ 19, quoting *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus.

{¶29} When reviewing a statute, the court must refrain from "pick[ing] out one sentence and disassociat[ing] it from the context * * *." *State v. Wilson*, 77 Ohio St.3d 334, 336 (1997). Instead, "[i]n ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811 (1988). In this endeavor, "significance and effect should if possible be accorded every word, phrase, sentence and part of an act." *Wachendorf v. Shaver*, 149 Ohio St. 231, 237 (1948).

{¶30} Generally, statutes in derogation of the common law, such as R.C. 2107.52, are to be strictly construed. *Sabol v. Pekoc*, 148 Ohio St. 545, 552 (1947); *see Dollar Sav. & Trust Co. of Youngstown v. Turner*, 39 Ohio St.3d 182, 184 (1988), *superseded by statute as stated in Polen v. Baker*, 92 Ohio St.3d 563 (2001). However, "[t]he rule of the common law that statutes in derogation of the common law must be strictly construed has no application to remedial laws." R.C. 1.11. Instead, "[r]emedial laws * * * shall be liberally construed in order to promote their object and assist the parties in obtaining justice." *Id.* R.C. 2107.52 is one such remedial law. *Dollar Sav. & Trust Co.* at 184-185, quoting *Woolley*, 46 Ohio St. at 314. "Nevertheless, courts do not have the authority to ignore the plain and unambiguous language of a statute under the guise of * * * liberal construction; in such situation, the courts must give effect to the words utilized." *Morgan v. Ohio Adult Parole Auth.*, 68 Ohio St.3d 344, 347 (1994).

**ii. R.C. 2107.52(B)(2)(a) is meant to incorporate R.C. 2107.52(A)(3)'s definition of "devise."**

{¶31} We begin our analysis by establishing what sort of meaning to give to the word "devise" in R.C. 2107.52(B)(2)(a). That is, we must decide whether to give the word "devise" its usual and ordinary meaning or whether to give it the meaning ascribed to it by R.C. 2107.52(A)(3). It is a cardinal rule of statutory interpretation that the words in a statute "'should be construed in their ordinary and natural meaning, and be given the meaning ordinarily attributed to them unless a

different intention appears in the statute.'" *State v. Michael*, 3d Dist. Allen No. 1-14-11, 2014-Ohio-4535, ¶ 15, quoting *State ex rel. Gareau v. Stillman*, 18 Ohio St.2d 63, 64 (1969). A legislative body may manifest its intention to deviate from the common and accepted meaning of a word through the use of an explicit statutory definition. Indeed, where a word or phrase has acquired a specialized or particular meaning by legislative definition, the word or phrase "shall be construed accordingly." R.C. 1.42.

{¶32} When determining the plain meaning of a statute, courts must rely on legislative definitions because a "definition by the average man or even by the ordinary dictionary with its studied enumeration of subtle shades of meaning is not a substitute for the definition set before us by the lawmakers with instructions to apply it to the exclusion of all others." *Fox v. Std. Oil Co. of New Jersey*, 294 U.S. 87, 96, 55 S.Ct. 333 (1935). Therefore, "[d]efinitions provided by the General Assembly are to be given great deference in deciding the scope of particular terms." *Montgomery Cty. Bd. of Commrs. v. Pub. Util. Comm.*, 28 Ohio St.3d 171, 175 (1986). In most cases, "[s]tatutory definitions of terms are controlling in the application of the statute to which such definitions pertain." *Woman's Internatl. Bowling Congress, Inc. v. Porterfield*, 25 Ohio St.2d 271, 275 (1971). This is so even if a definition is at odds with the ordinary meaning of the defined term or with the meaning given to the same term in other statutes. *Digital Realty Trust, Inc. v.*

*Somers*, 583 U.S. ___, 138 S.Ct. 767, 776-777 (2018), quoting *Burgess v. United States*, 553 U.S. 124, 130, 128 S.Ct. 1572 (2008); *Good Samaritan Hosp. of Dayton v. Porterfield*, 29 Ohio St.2d 25, 30 (1972). Only in rare circumstances is a legislative definition not conclusive. *See, e.g.*, *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201, 69 S.Ct. 503 (1949) (declining to apply a statutory definition "in a mechanical fashion" because it would "create obvious incongruities in the language" and "destroy one of the major purposes" of the statute).

{¶33} Here, it is plain that the General Assembly intended to incorporate R.C. 2107.52(A)(3)'s definition of "devise" into R.C. 2107.52(B)(2)(a). The introductory language in R.C. 2107.52(A), i.e., "[a]s used in this section," indicates that the General Assembly meant for R.C. 2107.52(A)(3)'s definition of "devise" to apply throughout R.C. 2107.52. *See Woman's Internatl. Bowling Congress* at 275. We have no doubt that the General Assembly envisioned that R.C. 2107.52(A)(3) would control the meaning of the word "devise" as it appears in R.C. 2107.52(B)(2)(a).

### iii. R.C. 2107.52(A)(3) sets forth an exhaustive list of the kinds of testamentary gifts that qualify as "devises" for purposes of R.C. 2107.52(B)(2)(a).

{¶34} Because we start with an expectation that the word "devise" in R.C. 2107.52(B)(2)(a) will be construed in accordance with R.C. 2107.52(A)(3) rather than in accordance with its common and ordinary meaning, it is necessary to ascertain the meaning of R.C. 2107.52(A)(3)'s definition of "devise." Mary Ann

and Phyllis advocate for a narrow reading of R.C. 2107.52(A)(3), one cabining "devises" to only a few varieties of (relatively less common) testamentary gifts. They argue that because the word "means" is used to introduce the definition of "devise," the only categories of testamentary gifts that constitute "devises" for purposes of R.C. 2107.52 are those specifically enumerated in R.C. 2107.52(A)(3)—namely, "alternative devises," "devises in the form of a class gift," and "exercises of a power of appointment."  In other words, Mary Ann and Phyllis argue that R.C. 2107.52(A)(3) sets forth a complete list of testamentary gifts that can qualify as a "devise," rather than an illustrative list of qualifying testamentary gifts or a list expanding the definition of "devise" beyond its ordinary meaning.  For Mary Ann and Phyllis, the issue of whether the list in R.C. 2107.52(A)(3) is exhaustive, illustrative, or additive is important because, as they observe, a significant category of devises, "primary devises," has been omitted from the list by the legislature.

{¶35} To better understand Mary Ann and Phyllis's argument, we first survey the four categories of testamentary gifts at issue.  A "primary devise" is a "devise to the first person named as taker."[7]  PRIMARY DEVISE, *Black's Law Dictionary* (11th Ed.2019).  In contrast, an "alternative devise" is a "devise that, under the terms of the will, is designed to displace another devise if one or more

---

[7] In this paragraph, the word "devise" is again used in its ordinary modern sense, not in the specific sense conveyed by R.C. 2107.52(A)(3).  *See* Footnote 2, *supra*.

specified events occur." ALTERNATIVE DEVISE, *Black's Law Dictionary* (11th Ed.2019). An alternative devise necessarily follows a primary devise. "For example, a devise of 'Blackacre to A, but if A does not survive me then to B' names A as the recipient of the primary devise and B as the recipient of the * * * alternative devise." PRIMARY DEVISE, *Black's Law Dictionary* (11th Ed.2019). A "class gift" is a "gift to a group of persons, uncertain in number at the time of the gift but to be ascertained at a future time, who are all to take in definite proportions, the share of each being dependent on the ultimate number in the group." CLASS GIFT, *Black's Law Dictionary* (11th Ed.2019). Finally, a "power of appointment" is a "power created or reserved by a person having property subject to disposition, enabling the donee of the power to designate transferees of the property or shares in which it will be received; esp., a power conferred on a donee by will * * * to select and determine one or more recipients of the donor's estate[.]" POWER OF APPOINTMENT, *Black's Law Dictionary* (11th Ed.2019).

{¶36} According to Mary Ann and Phyllis, because each of the terms used in R.C. 2107.52(A)(3)'s definition of "devise" has a distinct, familiar legal meaning, it is telling that the term "primary devise," which has an equally clear and established legal meaning, is omitted from R.C. 2107.52(A)(3). They maintain that the clear import of this omission is that the General Assembly intended for all testamentary gifts "to the first person named as taker," other than those in the form

of a class gift or constituting an exercise of a power of appointment,[8] to be excluded from R.C. 2107.52(A)(3)'s definition of "devise."

**{¶37}** Where we are confronted with a statutorily defined term as we are in this case, we treat the statutorily defined term no differently than we treat other statutory provisions— "[w]hen the text of the statute in question is plain and unambiguous, * * * we give effect to the legislature's intent by simply applying the law as written." *State v. Faggs*, 159 Ohio St.3d 420, 2020-Ohio-523, ¶ 15. For the following reasons, the plain and unambiguous language of R.C. 2107.52(A)(3) compels us to agree with Mary Ann and Phyllis that R.C. 2107.52(A)(3) is an exhaustive definition and that, consequently, a primary devise does not generally qualify as a "devise" as that term is defined in R.C. 2107.52(A)(3).[9]

**a. The word "means" in R.C. 2107.52(A)(3) is a word of restriction, rather than a word of illustration or expansion.**

**{¶38}** The particular language used to introduce R.C. 2107.52(A)(3)'s definition of "devise" is the first textual indication that R.C. 2107.52(A)(3) is intended to be an exhaustive definition. Forms of the words "includes" and "means"

---

[8] R.C. 2107.52(A)(3) does not contain any language qualifying the terms "devise in the form of a class gift" or "exercise of a power of appointment." For example, R.C. 2107.52(A)(3) does not say "an *alternative* devise in the form of a class gift." Therefore, every "devise in the form of a class gift" and "exercise of a power of appointment" is included in the definition of "devise," irrespective of whether the gift is to "the first person [or class of persons] named as taker" or whether the gift is one that displaces another testamentary gift upon the happening of some specified event.

[9] In this sentence, we use the word "generally" because, again, all devises in the form of a class gift and all exercises of a power of appointment, including those that also happen to qualify as "primary devises," fall within R.C. 2107.52(A)(3)'s definition of "devise." From this point forward, to avoid confusion and unless otherwise stated, when we use the term "primary devise," we refer to primary devises that are not in the form of a class gift and that do not constitute exercises of a power of appointment.

are frequently used to introduce the text of statutory definitions. "The terms 'means' and 'includes' are not necessarily synonymous." *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 125, 55 S.Ct. 60 (1934), fn. 1. "The word 'includes' is usually a term of enlargement, and not of limitation." 2A N. Singer, *Sutherland Statutes and Statutory Construction*, Section 47:7 (7th Ed.). "[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle." *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100, 62 S.Ct. 1 (1941). Thus, "[w]hen a definitional section says that a word 'includes' certain things, that is usually taken to mean that it may include other things as well." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 226 (2012); *see Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, ¶ 20 ("[T]he General Assembly's use of 'includes' in R.C. 149.011(G) as a preface to the definition of 'records' is an indication of expansion rather than constriction, restriction, or limitation * * *."); *Helvering* at 125, fn. 1 (observing that use of some form of the word "includes" "indicates that the particular is not necessarily a substitute for the general term, excluding more general meanings included within its scope"); *Argosy Ltd. v. Hennigan*, 404 F.2d 14, 20 (5th Cir.1968) (noting that the word "includes" "conveys the conclusion that there are other items includable, though not specifically enumerated by the statutes").

**{¶39}** By contrast, when "a definitional section says that a word 'means' something, the clear import is that this is its *only* meaning." (Emphasis sic.) Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 226 (2012). Therefore, "'[a]s a rule, [a] definition which declares what a term "means" * * * excludes any meaning that is not stated.'" *Burgess*, 553 U.S. at 130, quoting *Colautti v. Franklin*, 439 U.S. 379, 392-393, 99 S.Ct. 675 (1979), fn. 10; *see Groman v. Commissioner of Internal Revenue*, 302 U.S. 82, 86, 58 S.Ct. 108 (1937) ("[W]hen an exclusive definition is intended the word 'means' is employed, * * * whereas here the word used is 'includes.'"). A statutory definition declaring what a term "means" is less susceptible of extension by construction than a definition declaring what a term "includes." *See* 2A N. Singer, *Sutherland Statutes and Statutory Construction*, Section 47:7 (7th Ed.). Where a form of the word "means" is employed to define a term, "the term and its definition are to be interchangeable equivalents[.]" *Helvering* at 125, fn. 1.

**{¶40}** Here, under R.C. 2107.52(A)(3), a "devise" *means* "an alternative devise, a devise in the form of a class gift, or an exercise of a power of appointment." Use of the word "means" in R.C. 2107.52(A)(3) clearly conveys that R.C. 2107.52(A)(3) is intended to be an exhaustive definition and that the three kinds of testamentary gifts following the word "means" are to be the only kinds of testamentary gifts capable of qualifying as "devises." Because primary devises are

not listed in R.C. 2107.52(A)(3), primary devises are not includable in R.C. 2107.52(A)(3)'s definition of "devise."

**b.  Varying use of the words "means" and "includes" in R.C. 2107.52(A) suggests that the word "means" is used when an exhaustive definition is intended.**

{¶41} The rest of R.C. 2107.52(A), R.C. 2107.52's definitional section, further indicates that R.C. 2107.52(A)(3) is meant to contain an exhaustive definition of the word "devise."  The definition of "devise" in R.C. 2107.52(A)(3) is one of eight definitions set forth in R.C. 2107.52(A).  Seven of the eight definitions in R.C. 2107.52(A) use the word "means" to introduce the definition.  *See* R.C. 2107.52(A)(1)-(7).  However, R.C. 2107.52(A)(8) states that the term "testator" "*includes* the donee of a power of appointment if the power is exercised in the testator's will."  (Emphasis added.).

{¶42} In general, when the legislature uses particular language in one part of a statute but omits that language in another part of the statute or uses different language, it is presumed that the legislature did so intentionally and purposely.  *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236, 2014-Ohio-5511, ¶ 26; *NACCO Industries, Inc. v. Tracy*, 79 Ohio St.3d 314, 316 (1997).  The General Assembly must be presumed "to know the meaning of words, to have used the words of a statute advisedly and to have expressed legislative intent by the use of the words found in the statute * * *."  *Wachendorf*, 149 Ohio St. at 237.

{¶43} Accordingly, we presume that the General Assembly was familiar with the differing meanings of the words "means" and "includes" when it enacted R.C. 2107.52. We also presume that the General Assembly made a considered and deliberate decision to preface some of the definitions in R.C. 2107.52(A) with the word "means" instead of the word "includes," and vice versa. The most sensible explanation for this decision is that "[b]y switching between 'means' and 'includes' in the same definitional provision, [the General Assembly] signaled its intent to distinguish between exhaustive and non-exhaustive lists." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1115 (D.C.Cir.2009); *see American Sur. Co. of New York v. Marotta*, 287 U.S. 513, 517, 53 S.Ct. 260 (1933) (where a statute varyingly used the phrases "shall include" and "shall mean," it was "evident that these verbs [were] not used synonymously or loosely, but with discrimination and a purpose to give to each a meaning not attributable to the other," such that "shall include" could not "reasonably be read to be the equivalent of 'shall mean' or 'shall include only'"); *United States v. Gertz*, 249 F.2d 662, 666 (9th Cir.1957) (noting that the likelihood that "includes" was used as a term of illustration or enlargement was "fortified" by the definitional section's varying use of both "means" and "includes"); *S.D. Warren Co. v. Bd. of Environmental Protection*, 868 A.2d 210, 216-217 (Me.2005) (concluding that where a statute contained 23 definitions, 22 of which used the word "means" and only 1 of which used the word "includes,"

varying use of "means" and "includes" suggested that "includes" was meant as a term of illustration or expansion).

{¶44} Given that R.C. 2107.52(A) uses both "means" and "includes" to define the terms used in R.C. 2107.52, if the word "means" in R.C. 2107.52(A)(3) were to be read expansively, the word "includes" would be deprived of its independent significance within R.C. 2107.52. To do so would be to "transmogrify" the word "means" into the word "includes." *See Lyman v. Town of Bow Mar*, 533 P.2d 1129, 1133 (Colo.1975). However, "if the General Assembly could have used a particular word in a statute but did not, we will not add that word by judicial fiat." *Hulsmeyer* at ¶ 26. It is our duty to "give effect to the words used, making neither additions nor deletions from words chosen by the General Assembly." *In re Application of Columbus S. Power Co.*, 138 Ohio St.3d 448, 2014-Ohio-462, ¶ 26. From R.C. 2107.52(A), it is clear that the General Assembly knew how to craft exhaustive and non-exhaustive definitions. In defining the word "devise" in R.C. 2107.52(A)(3), the General Assembly could have expressed its intention to create a non-exhaustive definition by using the word "includes" as it did in R.C. 2107.52(A)(8). That it did not reinforces that R.C. 2107.52(A)(3) is intended to be an exhaustive definition. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 711, 124 S.Ct. 2739 (2004), fn. 9 ("[T]he usual rule [is] that 'when the legislature uses certain language in one part of the statute and different language in another, the court

assumes different meanings were intended.'"), quoting 2A N. Singer, *Sutherland Statutes and Statutory Construction*, Section 46:06, at 194 (6th Rev.Ed.2000).

**iv. R.C. 2107.52(A)(3)'s definition of "devise" cannot be read out of R.C. 2107.52(B)(2)(a) on the basis that using it produces absurd results or defeats the purpose of R.C. 2107.52.**

**{¶45}** At various points throughout their appellate brief, David and Linda assert that it would be "absurd" to interpret and apply R.C. 2107.52(A)(3) in a way that excludes primary devises from the definition of "devise." David and Linda's use of the word "absurd" to describe the legislature's limited definition of "devise" in R.C. 2107.52(A)(3) seems to be little more than rhetoric, but in the interests of thoroughness, we will assume that David and Linda actually mean to invoke the absurdity doctrine.

**{¶46}** "'The absurd result principle in statutory interpretation provides an exception to the rule that a statute should be interpreted according to its plain meaning.'" (Emphasis deleted.) *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, ¶ 22 (plurality opinion), quoting Dougherty, *Absurdity and the Limits of Literalism: Defining the Absurd Result Principle in Statutory Interpretation*, 44 Am.U.L.Rev. 127 (1994). "It is premised on a guiding principle of statutory construction: that when the General Assembly enacts a statute, it does not intend to produce an absurd result." *Id.*, citing R.C. 1.47(C). However, "'[t]he absurd-result exception to the plain-meaning rule

of [statutory] construction' applies 'only [to] those cases in which the plain language of a statute results in an *obviously unintended result*.'" (Emphasis sic.) *State ex rel. Meyer v. Warren Cty. Bd. of Elections*, __ Ohio St.3d __, 2020-Ohio-4863, ¶ 14 (plurality opinion), quoting *State ex rel. Clay* at ¶ 26 (plurality opinion).

> Moreover, "even if the plain-language application of a statute would yield an absurd result, the absurdity doctrine does not permit a court to correct the absurdity unless it is 'reparable by changing or supplying a particular word or phrase whose inclusion or omission was obviously a technical or ministerial error * * *. The doctrine does not include substantive errors arising from a drafter's failure to appreciate the effect of certain provisions.'"

*Id.*, quoting *State v. Parker*, 157 Ohio St.3d 460, 2019-Ohio-3848, ¶ 28 (lead opinion), quoting Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, 238 (2012).

**{¶47}** Here, the plain language of R.C. 2107.52(A)(3) and of R.C. 2107.52 as a whole indicate that R.C. 2107.52(A)(3)'s definition of "devise" is an exhaustive definition. Furthermore, it is clear that R.C. 2107.52(B)(2) incorporates R.C. 2107.52(A)(3)'s definition of "devise" and that this definition directs which testamentary gifts can give rise to a substitute gift under R.C. 2107.52(B)(2). Consequently, under R.C. 2107.52(B)(2), substitute gifts can only be created from alternative devises, devises in the form of a class gift, or exercises of a power of appointment; substitute gifts cannot be created from primary devises.

**{¶48}** As we discuss near the conclusion of this opinion, we question whether the General Assembly intended this result. Nevertheless, even if this result was unintended, we could not use the absurdity doctrine to correct the General Assembly's oversight. This is because the cause of the supposed absurdity, R.C. 2107.52(A)(3)'s use of the word "means" rather than "includes" to define "devise," does not appear to be an obvious technical or ministerial error on the part of the General Assembly. To the contrary, the General Assembly seems to have carefully and consciously chosen to use the word "means" to define "devise." This point is well illustrated by comparing R.C. 2107.52, which was modeled in part after Section 2-603 of the Uniform Probate Code ("UPC"), to UPC Section 2-603 and to the anti-lapse statutes of other states that used UPC Section 2-603 as a template.

**{¶49}** As in R.C. 2107.52, the first part of UPC Section 2-603 sets forth a series of definitions, including a definition of the word "devise." Under UPC Section 2-603(a)(5), a "'[d]evise' *includes* an alternative devise, a devise in the form of a class gift, and an exercise of a power of appointment." (Emphasis added.). Moreover, in addition to Ohio, at least nine other states have adopted anti-lapse statutes modeled after UPC Section 2-603. Of these states, Alaska, Arizona, Colorado, Hawaii, Maine, Montana, New Mexico, and Utah have adopted UPC Section 2-603(a)(5)'s definition of "devise" verbatim. Alaska Stat.Ann. 13.12.603(d)(4); Ariz.Rev.Stat.Ann. 14-2603(D)(3); Colo.Rev.Stat.Ann. 15-11-

603(1)(c); Haw.Rev.Stat.Ann. 560:2-603(a); 18-C Me.Rev.Stat.Ann. 2-603(1)(D); Mont.Code Ann. 72-2-613(1)(e); N.M.Stat.Ann. 45-2-603(A)(5); Utah Code Ann. 75-2-603(1)(c).  Similarly, in Michigan, a "'[d]evise' *includes, but is not limited to*, an alternative devise, a devise in the form of a class gift, and an exercise of a power of appointment."  (Emphasis added.) Mich.Comp.Laws Ann. 700.2601(c).

{¶50} The definitions in R.C. 2107.52(A) vary from those in UPC Section 2-603(a) in other ways.  For example, R.C. 2107.52(A)(1)'s definition of "class member" and UPC Section 2-603(a)(2)'s definition of "class member" are substantially identical except that R.C. 2107.52(A)(1) introduces its definition with the word "means," whereas UPC Section 2-603(a)(2) introduces its definition with the word "includes."  The same is true of R.C. 2107.52(A)(4)'s and UPC Section 2-603(a)(6)'s respective definitions of "devisee."  However, R.C. 2107.52(A)(6)'s definition of "stepchild" and R.C. 2107.52(A)(8)'s definition of "testator" follow the corresponding definitions in UPC Section 2-603(a)(7) and (9) to the letter.

{¶51} In our view, the differences and similarities between R.C. 2107.52 and these other statutes foreclose the possibility that the word "means" was inserted into R.C. 2107.52(A)(3)'s definition of "devise" by accident.  Given the extensive parallels between R.C. 2107.52 and the provisions of UPC Section 2-603, the General Assembly was clearly familiar with UPC Section 2-603.  In some places, where the General Assembly was evidently satisfied with the definitions set forth in

UPC Section 2-603(a), it elected to adopt those definitions without making any alterations. In other places, such as in R.C. 2107.52(A)(3), the General Assembly apparently disapproved of the model definitions as written and decided to revise them. Though the General Assembly might not have fully appreciated the practical effect of its modifications, this does not authorize us to rewrite R.C. 2107.52 under the guise of correcting an absurdity.[10]

{¶52} As a final matter, we dispense with any suggestion that we should decline to apply R.C. 2107.52(A)(3)'s definition of "devise" to R.C. 2107.52(B)(2) because it would defeat the purpose of R.C. 2107.52. Again, there are circumstances in which courts can properly refuse to apply a legislative definition. For example, the Supreme Court of the United States has "declined to apply a statutory definition that ostensibly governed where doing so would have been 'incompatible with * * * Congress' regulatory scheme,' * * * or would have 'destroy[ed] one of the [statute's] major purposes.'" *Digital Realty Trust*, 138 S.Ct. at 778, quoting *Utility Air Regulatory Group v. EPA*, 573 U.S. 302, 134 S.Ct. 2427, 2443 (2014) and *Suwannee Fruit*, 336 U.S. at 201.

{¶53} In R.C. 2107.52, "[t]he legislature presumed that a testator would want the [surviving descendants] of * * * [specified] predeceased relative[s] to inherit the relative's share rather than have the devise lapse." *Belardo v. Belardo*, 187 Ohio

---

[10] Had the General Assembly adopted the definitions provided in UPC Section 2-603 verbatim, the meaning of "devise" would comport with the traditional application of the anti-lapse statute.

App.3d 9, 2010-Ohio-1758, ¶ 15 (8th Dist.). Thus, the purpose of R.C. 2107.52 is to prevent the inadvertent and undesired disinheritance of certain branches of a testator's family. Admittedly, reading R.C. 2107.52(A)(3) as an exhaustive definition and applying that definition to R.C. 2107.52(B)(2) will frustrate this purpose in many cases. We suspect that a great many wills in this state contain at least one primary devise to a grandparent, descendant of a grandparent, or stepchild of the testator. With respect to such wills, if the recipient of the primary devise predeceases the testator and the testator does not make an alternative disposition, the primary devise will invariably lapse—a result directly at odds with R.C. 2107.52's purpose.

{¶54} Nonetheless, this interpretation and application of R.C. 2107.52(A)(3)'s definition of "devise" does not so completely destroy R.C. 2107.52's purpose as to justify ignoring the statutory definition. After all, alternative devises, devises in the form of a class gift, and exercises of a power of appointment still benefit from the protections of R.C. 2107.52. Even if the number of testamentary gifts qualifying for the protections of R.C. 2107.52 is relatively small, "'[i]t is our function to give the statute the effect its language suggests, however modest that may be.'" *Digital Realty Trust* at 780, quoting *Morrison v. Natl. Australia Bank Ltd.*, 561 U.S. 247, 270, 130 S.Ct. 2869 (2010).

**v. Because the gift to John in Item II of Theodore's will is not a "devise" as defined in R.C. 2107.52(A)(3), a substitute gift cannot be created for David and Linda.**

{¶55} The parties agree that since the gift to John in Item II of Theodore's will is to an individual rather than to a class of persons, R.C. 2107.52(B)(2)(a) applies in determining whether a substitute gift can be created in favor of David and Linda. Under R.C. 2107.52(B)(2)(a), a substitute gift is created from a "devise," and as we have explained, the word "devise" in R.C. 2107.52(B)(2)(a) takes its meaning from the definition of "devise" in R.C. 2107.52(A)(3). As we have also explained, because R.C. 2107.52(A)(3)'s definition of "devise" is an exhaustive definition, the only kinds of testamentary gifts that can qualify as a "devise" within the meaning of R.C. 2107.52(A)(3) are alternative devises, devises in the form of a class gift, and exercises of a power of appointment. Thus, reading the relevant portions of R.C. 2107.52(A)(3)'s definition of "devise" into R.C. 2107.52(B)(2)(a), only alternative devises and exercises of a power of appointment can give rise to substitute gifts under R.C. 2107.52(B)(2)(a).

{¶56} The gift to John in Item II of Theodore's will is neither an alternative devise nor an exercise of a power of appointment. Instead, because it is to John as "the first person named as taker," it is a primary devise. Accordingly, because the gift to John is not an alternative devise or an exercise of a power of appointment, it does not constitute a "devise." Because the gift to John in Item II of Theodore's

will does not qualify as a "devise," R.C. 2107.52(B)(2)(a) cannot operate to create a substitute gift in favor of David and Linda. As in other circumstances where R.C. 2107.52(B)(2)(a) cannot operate to create a substitute gift, such as where the testamentary gift is made to someone other than a grandparent, a descendant of a grandparent, or a stepchild of the testator, the effect is that the gift to John in Item II of Theodore's will lapses. Therefore, because the gift to John in Item II of Theodore's will lapses, we conclude that the trial court erred by finding that a substitute gift is created in favor of David and Linda and by ordering that David and Linda each receive one half of Theodore's farm and farm chattels.

{¶57} We acknowledge that this result may not have been what the General Assembly intended when it enacted the 2019 version of R.C. 2107.52. For nearly two centuries, it was taken for granted that Ohio's anti-lapse statute applied to primary devises. *See, e.g.*, *Larwill's Exrs. v. Ewing*, 73 Ohio St. 177 (1905). Moreover, anti-lapse statutes in general are understood to apply to primary devises. *See* Restatement of the Law 3d, Property, Wills & Donative Transfers, Section 5.5, Comment k (1999). Furthermore, the other states that have enacted anti-lapse statutes modeled closely after UPC Section 2-603 defined "devise" using the word "includes," thus preserving primary devises among the list of testamentary gifts to which the anti-lapse statute applies.

**{¶58}** Nevertheless, in construing and applying a statute, "we do not ask 'what did the General Assembly intend to enact, but what is the meaning of that which it did enact.'" *State v. Turner*, 163 Ohio St.3d 421, 2020-Ohio-6773, ¶ 17, quoting *Slingluff v. Weaver*, 66 Ohio St. 621 (1902), paragraph two of the syllabus. Our role "'is not to decide what the law *should* say; rather, the role of this court is to interpret what the law says *as it has been written by the General Assembly*.'" (Emphasis sic.) *Hulsmeyer*, 142 Ohio St.3d 236, 2014-Ohio-5511, at ¶ 27, quoting *Clark v. Scarpelli*, 91 Ohio St.3d 271, 291 (2001) (Cook, J., dissenting). "Indeed, the legislature, not the courts, should resolve any incongruity between the legislature's intent and the statutory language enacted." *Ohio Neighborhood Fin., Inc. v. Scott*, 139 Ohio St.3d 536, 2014-Ohio-2440, ¶ 36. If any such incongruity exists between the General Assembly's intent in enacting the 2019 version of R.C. 2107.52 and our conclusions about the meaning of the statutory language it actually enacted, it is the General Assembly's prerogative to reform the statutory language to reflect its intent, and we strongly encourage it to do so.[11]

---

[11] In fact, the General Assembly has recently exercised this prerogative with respect to R.C. 2107.52. The 2012 version of R.C. 2107.52 provided that "[i]f the devise is in the form of a class gift, other than a devise to 'issue,' 'descendants,' 'heirs of the body,' 'heirs,' 'next of kin,' 'relatives,' or 'family,' *or a class described by language of similar import*, a substitute gift is created in the surviving descendants of any deceased devisee." (Emphasis added.) R.C. 2107.52(B)(2)(b) (Mar. 22, 2012). In 2015, the Sixth District Court of Appeals, interpreting former R.C. 2107.52(B)(2)(b), concluded that "a devise to one's 'children' is not entitled to the anti-lapse protections afforded under [former] R.C. 2107.52(B)(2)(b)" because "the class of 'children' is of similar import to the classes" specifically listed in former R.C. 2107.52(B)(2)(b). *Castillo v. Ott*, 6th Dist. Lucas No. L-14-1248, 2015-Ohio-905, ¶ 14. In response to *Castillo*, the General Assembly amended R.C. 2107.52(B)(2)(b) to provide that gifts to a "class described by language of similar import *that includes more than one generation*" are not entitled to the protections of R.C. 2107.52(B)(2)(b). (Emphasis added.) R.C. 2107.52(B)(2)(b) (Mar. 22, 2019). As one commentator has observed, in the 2019 version of

{¶59} Mary Ann's and Phyllis's first assignments of error are sustained.

**C.    Mary Ann's Second and Phyllis's Third Assignments of Error:   In construing Theodore's will, did the trial court err by finding that Theodore intended for R.C. 2107.52 to apply to the gift to John in Item II of his will?**

{¶60} In Mary Ann's second and Phyllis's third assignments of error, they argue that the trial court misconstrued Theodore's will and that, in his will, Theodore expressed his intention for the substitute-gift provisions of R.C. 2107.52 not to apply to the gift to John in Item II.  However, having already concluded that the substitute-gift provisions of R.C. 2107.52 do not apply to the gift to John in Item II of Theodore's will, these assignments of error are rendered moot, and we therefore decline to address them.  *See Ada Exempted Village School Dist. Bd. of Edn. v. Ada Wind, LLC*, 3d Dist. Hardin No. 6-19-13, 2020-Ohio-4017, ¶ 39, citing App.R. 12(A)(1)(c).

## IV.  Conclusion

{¶61} For the foregoing reasons, Phyllis's second assignment of error is overruled, but Mary Ann's and Phyllis's first assignments of error are sustained. Having found error prejudicial to the appellants herein in the particulars assigned

R.C. 2107.52, the General Assembly "effectively overturn[ed] the *Castillo* decision" and clarified its intent for R.C. 2107.52(B)(2)(b) to apply to single-generation classes, but not to multi-generation classes.  Brian C. Layman, *Ohio's Anti-Lapse Statute and the Statutory Response to* Castillo v. Ott, 29 Ohio Prob. L.J. NL 9 (January/February 2019).

and argued, we reverse the judgment of the Mercer County Court of Common Pleas,

Probate Division, and remand for further proceedings consistent with this opinion.

***Judgment Reversed and
Cause Remanded***

**ZIMMERMAN and SHAW, J.J., concur.**

**/jlr**